McLEOD *v.* SAVOY HOTEL CO.

1. INNKEEPERS—NEGLIGENCE—OPERATION OF PASSENGER ELEVATORS.
    Questions of negligence in operation of hotel passenger elevator and proximate cause of death of passenger thereon *held,* properly submitted to jury, where there was testimony that safety door on cage and automatic device controlling same were so disabled as to enable operator to use elevator without closing said door.

2. SAME—CONTRIBUTORY NEGLIGENCE OF ELEVATOR PASSENGER.
    Matter of contributory negligence of passenger in hotel elevator *held,* properly submitted to jury, where testimony showed that

she fell to the elevator floor and through the open doorway of the cage while it was in motion although cause of fall is mere conjecture.

3. PLEADING—AMENDMENT—STATUTE OF LIMITATIONS.

Amendment of declaration in tort over four years after accident which merely amplifies allegations of original declaration by addition of ordinance provisions relative to safety devices and competent operators on passenger elevators does not amount to a new or different cause of action subject to the bar of the statute of limitations, where original declaration alleged such devices were present but not used on elevator in which accident occurred and defendant owed duty apart from ordi-·nance to have competent elevator operators (3 Comp. Laws 1929, § 13976).

4. NEGLIGENCE—ACCIDENT—INFERENCES.

While accident alone is not evidence of negligence, accident itself together with surrounding circumstances and legitimate inferences may establish negligence.

5. INNKEEPERS—COMPETENCY OF ELEVATOR OPERATORS.

Inference that hotel passenger elevator operator was incompetent may be legitimately drawn from negligent manner in which evidence shows he operated elevator.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 25, 1934. (Docket No. 119, Calendar No. 37,702.) Decided June 4, 1934.

Case by John McLeod, administrator of the estate of Elizabeth McLeod, deceased, against Savoy Hotel Company, a Michigan corporation, and another for death of plaintiff's decedent alleged to be due to negligence of defendant corporation. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Stevenson, Butzel, Eaman & Long (Leo W. Kuhn* and *A. Hilliard Williams,* of counsel), for defendants.

North, J. This is an action for damages arising from the accidental injury and death of plaintiff's decedent at a time when she was a passenger in an elevator owned and operated by the defendant hotel company in its hotel in the city of Detroit. On trial before jury, plaintiff had judgment. Defendant, now in receivership, appealed.

The accident happened about 2 a. m., March 24, 1929. During the evening of March 23d plaintiff's decedent, Elizabeth McLeod, and another young lady together with two male companions attended the Cass Theater and after the show went to the Oriole Terrace where they dined and drank. Between 1:30 and 2:00 o'clock on the morning of the 24th they engaged a cab for the purpose of returning the ladies to their homes in Redford, Mich. It was then discovered that the party had insufficient funds to pay the cab fare. The four thereupon went by cab to the defendant hotel where one of the male members of the company was registered as a guest. The purpose of the trip was that this guest might go to his room where he had a check book and by having a check cashed at his hotel the desired funds would be secured. All four members of the party entered the elevator at the hotel for the purpose of going to the room of this registered guest. The elevator was not crowded. It had a capacity of 15 and at the time there were six persons in the cage. Upon entering the elevator the other young lady in the party sat down upon the stool ordinarily used by the operator of the elevator, and Miss McLeod sat down upon this other young lady's knee facing the entrance to the elevator. The elevator was started on its upward course and when it was between the second and third floors Miss McLeod pitched forward, striking her head against the door

to the elevator shaft between the second and third floors. The upward motion of the car pulled her head down between the door guarding the shaft and the car floor, and she was killed instantly.

Plaintiff's declaration charges that it was the duty of the defendant to use a high degree of care in selecting persons to operate its elevators, such as were competent, qualified and experienced in the operation thereof; that it was the duty of the defendant and its employees in operating its elevators to exercise a high degree of care, particularly to keep the gates of said elevators closed while such elevators were in motion; not to start the elevators moving in a sudden manner or with unusual speed. Neglect to perform said duties is alleged and it is charged that plaintiff's decedent came to her death on account of the negligent use and operation of the elevator in which she was a passenger; that such negligence consisted in that defendant's servant then operating said elevator caused it to start to ascend in an unusually rapid manner and without closing the gate of said elevator, in such manner that plaintiff's intestate was caused to lose her balance and to be forcibly thrown through the open gate thereof, causing her death.

The primary question presented by this appeal is whether defendant was entitled to have a verdict directed in its favor as a matter of law or whether there was testimony which presented issues of fact as to negligence and contributory negligence.

*Negligence.* There is testimony that this elevator, in charge of a hotel porter instead of a regular elevator employee, was operated in an unusual and improper manner, such as caused Miss McLeod to fall to the floor of the elevator and resulted in her

injuries. One of the two male members of this party testified:

"The elevator started and went up and I would say to the third floor, I don't remember exactly, it all happened so quick, and apparently hesitated, and it then went on, and the first thing, one of the young ladies had apparently pitched forward. * * * As I remember it, the elevator sort of hesitated and then went on; I could not say how much of a jerk, but there was apparently a little slight stoppage on the elevator going up and it then went up.

"*Q*. When you felt the effect of this little hesitation, was it before the girl's body passed you?

"*A*. It was instantly, at the same time.

"*Q*. What if anything happened when she pitched forward?

"*A*. There was no door closed, the safety door, as you would call it, and she struck the door or whatever obstruction there was as the elevator passed, and was caught in there."

The other male member of the party testified:

"The elevator started to go up, and I don't remember whether it was the second or third floor; I don't know whether it was a jerk in the elevator or what, it all happened so suddenly, but Miss McLeod fell forward and as she fell forward it seemed to me her hat fell off and her hair got caught in the space between the elevator and the wall and it just dragged part of her body down."

The following is from the testimony of the other young lady:

"*Q*. Was there or was there not a sort of jerk at the time?

"*A*. There was, it seemed, as the elevator just started, when she went forward."

The circumstances immediately attending the accident are thus stated in the appellant's reply brief:

"The elevator was going up at the time deceased fell and she was caught by crashing through the door guarding the elevator shaft. * * * There is no testimony as to the construction of the elevator shaft (*i. e.* that it was improperly constructed). Furthermore it is immaterial because deceased lunged through the glass of the door guarding the shaft and was caught by the door, not by any projection in the elevator shaft."

Thus from appellant's own version of the manner in which plaintiff's decedent was injured, it appears that regardless of what caused her to fall to the floor of the elevator she seemingly could not have been injured in the manner described had the entrance way to the elevator cage been closed by use of the collapsible door with which it was equipped. The undisputed testimony discloses that this elevator was not only equipped with a collapsible door but also in connection with this door there was an automatic device designed to prevent starting the elevator until the door was closed. It is a fair inference from the testimony that the five- or six-inch space between the wall of the elevator shaft and the edge of the floor of the elevator cage necessitated the use of the collapsible door and an automatic device in order to operate the elevator with reasonable safety to passengers. Instead of so using the collapsible door and the automatic device, a plug had been placed in the electric switch. This prevented the automatic device from functioning and enabled the operator to use the elevator without closing the cage door. The record justifies the conclusion that this manner of operating the elevator by the employee was known to the defendant, or in exercise of reasonable care should have been so known. Clearly a jury question was presented as to whether

defendant negligently operated the elevator and whether such negligence was a proximate cause of the accident. As to proximate cause, it may be noted that regardless of the cause of Miss McLeod's fall, her death could not have occurred as it did if the collapsible door had been closed. The trial judge was correct in refusing to direct a verdict for defendant on the ground that there was no testimony tending to sustain plaintiff's charge of negligence.

*Contributory negligence.* From the record in this case it is not possible to say as a matter of law that plaintiff's decedent was guilty of contributory negligence. The proof is that she fell to the floor of the elevator and in so falling went forward and through the open doorway of the elevator cage and to her death. At most it is mere conjecture as to what caused her to fall. It may have been that she succumbed to the intoxicating effect of liquor which she drank earlier in the evening; she may have fainted, the swift or unusual motion of the elevator may have caused her to fall, or (although there is no testimony to that effect) she may have been jostled from her sitting position on her companion's knee and fallen. Evidently all the obtainable facts were presented in evidence and the question of Miss McLeod's contributory negligence was properly submitted to the jurors for determination.

Plaintiff's original declaration set forth his cause of action in the manner hereinbefore indicated. On April 18, 1933, nearly four years after the accident occurred, plaintiff was permitted over defendant's objection to amend the declaration by pleading the provisions of an ordinance of the city of Detroit, which so far as material, read:

"All (elevator) cars shall be provided with collapsible metal gates or horizontal sliding doors pro-

vided with mechanical interlocks or contact switches designed to prevent operation of car while gates are open. * * * Every passenger elevator must be in charge of a competent and reliable operator not less than 18 years of age.''

The case as submitted to the jury by the trial judge includes plaintiff's claim of right to recover based in part, at least, upon negligence of defendant incident to a claimed violation of the above ordinance provisions. Appellant asserts error on the part of the trial court in permitting this amendment to plaintiff's declaration after his cause of action, unless otherwise instituted, would have been barred by the statute of limitations. 3 Comp. Laws 1929, § 13976. An examination of the declaration leads to the conclusion that plaintiff did not by this amendment to the declaration assert a new and different cause of action. Instead, at most, the amendment merely amplifies the allegations of the original declaration, which does not constitute a new cause of action.

''An amendment consisting of a mere amplification or elaboration of the matters stated in the original pleading does not amount to the introduction of a new or different cause of action.'' 49 C. J. p. 513.

It should be noted that the first portion of the quoted ordinance merely requires that all elevators ''shall be provided with collapsible metal gates or horizontal sliding doors provided with mechanical interlocks or contact switches.'' In the instant case there is no claim of right of recovery because of defendant's failure to so equip its elevator. It is admitted that the elevator was properly equipped in this respect; but plaintiff complains of defendant's negligence in failing to make use of such equipment

for the safety and protection of plaintiff's decedent. As to the other provision of the ordinance the only material portion is that which requires the elevator to be "in charge of a competent and reliable operator." Apart from the provision of the ordinance, this duty was imposed by law upon defendant; and neglect of this duty was alleged in plaintiff's original declaration as a ground of recovery. Under the facts and circumstances of this case the amendment to the declaration did not constitute a new cause of action and was not prejudicial to defendant's rights.

Appellant also asserts error on the part of the trial court in submitting to the jury the question of the competency or incompetency of the operator of defendant's elevator. In this connection appellant asserts that there is no evidence that the elevator operator was incompetent or that he failed to do anything that an ordinarily prudent person would have done. We cannot agree that there is no testimony of that character in this record. As hereinbefore noted, there is evidence that the elevator was negligently operated, the inference may reasonably be drawn that therefore the operator who was in charge of the elevator at the time of the accident was incompetent. Especially is this true in view of the testimony that at the time of the accident the elevator mechanically was in good working condition. *Mirabile* v. *Simon J. Murphy Co.*, 169 Mich. 522; *Durfey* v. *Milligan*, 265 Mich. 97, wherein it is held:

"While the accident alone is not evidence of negligence, the accident itself, together with the surrounding circumstances and legitimate inferences, may establish negligence."

Surely from evidence indicating that defendant's employee operated the elevator in a negligent manner the inference may be legitimately drawn that such employee was incompetent.

Our review of the record in this case discloses nothing that would justify reversing the judgment entered in the trial court. It is therefore affirmed, with costs to appellee.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred. Bushnell, J., did not sit.