HAZEN *v.* ROCKEFELLER.

1. AUTOMOBILES—NEGLIGENCE—PROXIMATE   CAUSE—BURDEN   OF PROOF—EVIDENCE—PRESUMPTIONS—RES IPSA LOQUITUR.

   In action by customs inspector for injuries sustained when open door of defendant's car pinned plaintiff against side of customs building after car had been inspected and as it was leaving customs compound, plaintiff had burden of establishing by competent evidence that defendant was guilty of negligence proximately causing the injuries as negligence will not be presumed, the mere happening of an accident not being sufficient since the rule of *res ipsa loquitur* is not followed in this State.

2. NEGLIGENCE—ACCIDENT—RESULTING   INJURY—OTHER   CIRCUMSTANCES.

   Proof of an accident and resulting injury is not alone sufficient to establish a defendant's liability therefor, but the fact that the accident happened may be considered along with proof of the other circumstances to determine whether negligence existed.

3. SAME—CIRCUMSTANTIAL EVIDENCE.

   Negligence may be proved by circumstantial evidence.

Standard of care, see 2 Restatement, Torts, § 283.

4. SAME—EVIDENCE—INFERENCES.

To hold a defendant liable for injuries inflicted as a result of negligence there must be substantial evidence which forms a reasonable basis for the inference of negligence, more than a mere possibility that unreasonable conduct of the defendant caused the injury.

5. SAME—INFERENCES—CONJECTURE.

Although legitimate inferences as to negligence of parties may be drawn from established facts, the jury may not be permitted to guess.

6. AUTOMOBILES—STATUTES—DUE CARE.

7. SAME—CUSTOMS    INSPECTOR—NEGLIGENCE—CAR    DOOR—CONJECTURE.

In action by customs inspector against motorist whose car had just been inspected, for injuries plaintiff sustained when pinned against customs building by door of car as it was leaving the compound, while evidence that defendant opened or closed the door in question was not direct, it was such that trial court, sitting without jury, could infer from testimony and circumstances that defendant had not properly closed door and because thereof the door swung open and struck plaintiff, without resorting to speculation, conjecture, or guess.

8. EVIDENCE—INFERENCES DRAWN BY JUDGE.

It is the province of the trial judge in a nonjury case to draw legitimate inferences from the established facts and to weigh the probabilities from such established facts.

9. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE—RES IPSA LOQUITUR.

The holding of the Supreme Court that cases may be made by circumstantial evidence is not the adoption of the rule *res ipsa loquitur,* which is not favored by this court.

10. EVIDENCE—NONJURY LAW CASE—WEIGHT OF EVIDENCE.

In cases tried without a jury the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to.

11. APPEAL AND ERROR—NONJURY LAW CASE—PREPONDERANCE OF EVIDENCE.

In reviewing cases tried without a jury the finding of the trial judge will not be reversed unless the evidence clearly preponderates in the opposite direction.

12. DAMAGES—PERSONAL INJURIES.

    Judgment for $1,500 for plaintiff for personal injuries together with $204 for hospital and medical expenses *held,* not excessive where he suffered injuries to right side, left arm and hand.

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 21, 1942. (Docket No. 113, Calendar No. 42,184.) Decided November 25, 1942.

Case by Bertrand S. Hazen against William Rockefeller for personal injuries sustained when struck by door of automobile operated by defendant. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Simeon Cugell* and *Humphreys Springstun,* for plaintiff.

*Kerr, Lacey & Scroggie,* for defendant.

STARR, J. Defendant appeals from a judgment for plaintiff, in the amount of $1,704, rendered by the trial court sitting without a jury.

On July 25, 1939, plaintiff was in the employ of the United States government as customs inspector at Sault Sainte Marie, Michigan. At about noon on that date defendant, a college student, accompanied by his younger brother, crossed the Saint Mary's river on the ferry boat from Sault Sainte Marie, Ontario, Canada. He drove his practically new four-door Buick sedan, which was the last car off the ferry, into the enclosed yard or compound of the customs service. There were two lines of cars in the compound awaiting customs inspection, defendant's car being the last, or rear, car in one line.

Plaintiff was inspecting cars in defendant's line, and Chief Customs Inspector Baker was inspecting cars in the other line.

The exit from the customs compound was through a narrow lane or driveway between the customs office building and the immigration office building. Such exit driveway was only wide enough for one car to pass through with a few inches to spare on each side between the car and narrow cement ledges or walks adjoining each of the office buildings. Such ledges or walks between the exit driveway and buildings were about 18 inches wide and four inches higher than the driveway and extended a few feet beyond the buildings. As cars ahead of defendant's were inspected and approved, they were driven through the exit driveway.

Plaintiff testified regarding his inspection of defendant's car, and the accident occurring immediately thereafter, in part, as follows:

"*Q.* Tell the court how you did it (inspection), what you did?

"*A.* Well, when I arrived at Mr. Rockefeller's automobile, I noticed that he and his brother were very co-operative. They had gotten out of the automobile and had their car open and their baggage also open, ready to be inspected, and of course I inspected their baggage, first asking them if they had made any purchases or had anything to declare. * * *

"*Q.* * * * Who opened the doors or door of their automobile, to enable you to make the inspection?

"*A.* Well, one—I didn't see who opened the door. The door was open when I got to the car.

"*Q.* Well, did you open it?

"*A.* I did not. * * *

"*Q.* And state whether or not you closed the doors of the car?

"*A.*  I did not.

"*Q.*   And after you had finished your inspection, state whether or not the door or doors of the car were open?

"*A.*  They were.   *   *   *   It (defendant's car) was down in the compound, where it had gotten off the ferry boat. It was in the neighborhood of 90 feet from the customs building.   *   *   *   I inspected it out there in the compound. , After I inspected the car I turned and left the car and started walking in a southerly direction towards the customs house.   *   *   *   Just as I arrived at the corner of the customs office and had stepped on the ledge and proceeded perhaps two steps, I was struck in the back by the door of an automobile.   *   *   *   It was the left rear door of this Buick car belonging to Mr. Rockefeller (defendant), or which he was driving.   *   *   *   The hinge was toward the rear of the car and the door opened toward the back. It pinned me against the building, the customs building.   *   *   * I was within a few feet of the door of the customs building when I was struck.   *   *   *   I screamed and the automobile was stopped, and my chief inspector and the ferry company employee came and helped me out of the position I was in, between the building and the car door.   *   *   *

"*Q.*   And I believe you testified   *   *   *   that you didn't open the door and you didn't close the door; that is correct?

"*A.*  I did not.

"*Q.*  Why?

"*A.*  Because it was already open.   *   *   *

"*Q.*   And you don't know, I believe you testified, that you don't know who opened the door or who closed the door; that is correct?

"*A.*  I don't know definitely."

Plaintiff sustained injuries to his right side, left arm, and hand; was confined in the hospital for several days and thereafter at home under medical care. At the time of the trial nearly three years

after the accident plaintiff testified, in substance, that he had not recovered the normal use of his left arm and hand.

Plaintiff's only witness, Chief Inspector Baker, testified, in part:

"I saw the accident between an automobile and Mr. Hazen. * * * I saw a portion of the car come in contact with the body of Mr. Hazen. I was approximately 100 feet behind Mr. Hazen. He was walking from the car towards the customs house. I was behind him, that would be going south. I saw a portion of the inspection of the Rockefeller car by Mr. Hazen. I was out in the yard inspecting one line of cars and I believe the Rockefeller car was the last car in the line which Mr. Hazen was inspecting, and I was on the opposite side inspecting another car and, because I went down there, went to the car, I see Mr. Hazen at this car, and the Rockefeller boys were out of the car when he got there. I saw them open the bags.

"Q. Did you see them open the doors of the car before they opened the bags?

"A. I can't say that I did, but they were out of the car, and had their bags open for inspection when Mr. Hazen got there.

"Q. Were the doors of the car open or closed, or what doors were opened and what were closed, if they were not all in the same condition?

"A. I don't recall. * * *

"Q. And, what did you next see?

"A. Well, the car that I was inspecting had left, and I walked around behind the Rockefeller car, and was standing there when they started off to leave, and Hazen was ahead of me approximately 100 feet, and he got up to the customs office, he went to step up, as there is a step there, he stepped up on it, the Rockefeller car was coming up behind him, and just as he stepped up on there, the (left) rear door of the car flew open and pinned him against the corner of the building.

"*Q.* Now, who had closed that rear door of the car?

"*A.* I don't recall."

At the conclusion of plaintiff's proofs defendant moved for a judgment of no cause of action on the ground that plaintiff had failed to prove negligence on the part of defendant. Such motion was denied.

Defendant's testimony regarding the inspection of his car and the opening and closing of the left rear door was in conflict with that of plaintiff and Inspector Baker. Defendant testified, in part:

"When I arrived at Sault Ste. Marie (Michigan), I lined up my automobile for inspection. I saw Mr. Hazen, the plaintiff in this case up there. He was in uniform. He conducted an inspection of my automobile. The customs house itself was a little shack that was ahead of us. There were two lines of cars as we came off the ferry, we were the rear car in the left-hand lane, and the customs house was immediately forward, immediately ahead on the left-hand side. * * * When Mr. Hazen arrived opposite my car the first thing I did, we told him we had something—a lot of luggage in the trunk, we had two bags in the rear seat of the car and body of the car and the first thing he did, he asked the usual details, names, where we come in. * * * The article we purchased was in a little paper package in the trunk. I got out of the car, took the key from the ignition, went around to the rear of the car and opened up the trunk and took out the package and showed it to Mr. Hazen; the rest of the car was full of fishing rods, sleeping bags, he did not ask to take them out, he just looked at them. Then I closed the car; locked the trunk, got back in the front seat. * * *

"*Q.* * * * Did he look at the baggage in the rear seat of your automobile?

"*A.* He did, he opened the rear door and looked at it; we never opened any of the bags, but he looked at it. * * *

"*Q.* Now, you say that Mr. Hazen opened the rear door, is that the rear door on the left side?

"*A.* Yes, behind me.  *   *   *

"*Q.* Well, then, after looking in there, did he close the door, or—?

"*A.* Well, I thought he (plaintiff) did; he pushed the door to, anyway, and it made a metallic noise, as though it had shut; I did not look to see if it was tightly fastened.

"*Q.* Then did you return to the front seat, the driver's seat?

"*A.* I was in the front seat by then.  *   *   * We asked him (plaintiff) if that was all. He said, 'Yes.' He started to return, walk down to the house, the shack (customs building) there, and so we started forward.  *   *   *

"*Q.* Now, when was the first time that you realized that the door was open?

"*A.* I never realized that the door was open, actually until after we had struck Mr. Hazen. *   *   * We drove forward, I suppose 70 feet, we'll say, a little more, perhaps 100 feet, up to the point where he started to pass through this archway, and just as we came in, about 10 feet, my brother beside me said, 'Watch out.' I put on the brakes and by that point the door evidently swung open with the forward motion of the car and struck Mr. Hazen.

"*Q.* Now, do you recall what gear your car was in, was it in first, second, or third gear?

"*A.* I am not positive;  *   *   *  I am almost sure it was still in first.  *   *   *

"*Q.* I believe you told the court that when you started up, you did not make any inspection of your doors?

"*A.* I had no visual inspection.

"*Q.* You didn't get out and try the doors?

"*A.* No, sir.

"*Q.* You didn't take a look at the doors?

"*A.* No, I heard a metallic clang.  *   *   *  I had seen Mr. Hazen shut the door shut, and it sounded as though it were catching."

Defendant further testified that his brother did not open the left rear door but remained seated in the front seat during the entire time. The brother was not called as a witness.

Defendant's renewed motion for judgment of no cause of action was denied. The trial court's opinion states, in part:

"The court is of the opinion in this case that the door of this automobile was opened by this defendant—that the defendant got out of the automobile, unlocked the trunk and opened it, and there was an inspection made of the contents of the trunk. Considering the way this occurred, the court is of the opinion that the defendant also opened the door for the inspector to inspect the contents in the rear of the automobile, the suitcase and whatever there was in the rear of that automobile for the inspector to look at and inspect.

"Regardless of that, it seems to the court that the proximate cause of this accident was that this door was not properly locked before the car was put in motion by the defendant. I think it was the duty of the defendant to see that these doors were properly closed. This is true whether he closed them or whether the plaintiff closed them. The court, however, is of the opinion that the plaintiff did not open these doors, nor did he close them because he was way ahead of this automobile when the automobile was in motion. * * * The plaintiff started off along this walk toward this customs house, and the car started and proceeded through this passageway alongside of this customs house building. If he (plaintiff) had closed the door himself, the automobile would have been ahead of him and this accident could not have occurred, so the court is of the opinion that the doors were closed by the defendant and that they were not properly closed. * * *

"I think it is immaterial to the issues in this case as to who closed the doors. It was the duty of the

defendant to see that the doors were closed before the car was put in motion and started off, so it is purely a question in this case as to the damages that the plaintiff suffered.

"The court will find that the defendant was negligent and that the plaintiff is free from all contributory negligence."

The court awarded plaintiff $1,500 damages for his personal injuries, together with hospital and medical expenses of $204, and judgment was entered for plaintiff in the amount of $1,704.

Defendant's motion for a new trial was denied, and he appeals. He alleges error in the denial of his motion for judgment of no cause of action; and also that the judgment was excessive and was against the great weight of the evidence.

The burden was on plaintiff to establish, by competent evidence, that defendant was negligent, and also to establish a direct connection between such negligence and his injuries. *Nylund* v. *Gemo,* 295 Mich. 75. Negligence will not be presumed. *Schultz* v. *Sollitt Construction Co.,* 296 Mich. 125. The mere fact that an accident happened, resulting in plaintiff's injuries, does not establish defendant's negligence. *Burghardt* v. *Detroit United Railway,* 206 Mich. 545 (5 A. L. R. 1333). The rule of *res ipsa loquitur* is not followed in this State. *Weissert* v. *City of Escanaba,* 298 Mich. 443 (10 N. C. C. A. [N. S.] 9). In the case of *In re Estate of Miller,* 300 Mich. 703, 710, we quoted, with approval, the following statement by Mr. Justice BUTZEL in *Poundstone* v. *Niles Creamery,* 293 Mich. 455, 459, 460:

"Proof of an accident and resulting injury is not alone sufficient to establish defendant's responsibility, but the fact that an accident happened may be considered along with proof of the other circum-

stances to determine whether negligence existed. *Manley* v. *Potts*, 286 Mich. 671, and cases there cited. See, also, *Elsey* v. *J. L. Hudson Co.*, 189 Mich. 135 (L. R. A. 1916B, 1284). Negligence may be proved by circumstantial evidence. *Wilkins* v. *Bradford*, 247 Mich. 157. There must be substantial evidence which forms a reasonable basis for the inference of negligence. *Frye* v. *City of Detroit*, 256 Mich. 466. There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess, although legitimate inferences may be drawn from established facts. *Heppenstall Steel Co.* v. *Wabash Railway Co.*, 242 Mich. 464.''

In the absence of statutory requirements it was defendant's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances. 5 Am. Jur. p. 597, § 165. The question in the present case is, did defendant exercise such care and caution?

Defendant had driven his car in low gear at a speed of about 10 miles an hour for a distance of less than 100 feet when the left rear door swung open and struck plaintiff. Such car was practically new, having been driven 1,000 miles or less. It may reasonably be assumed that if the door had been properly closed, it would not, under the circumstances, have swung open; also, that defendant could, by inspection, have determined whether or not the door was properly closed. *Burghardt* v. *Detroit United Railway*, *supra*.

There is conflict in the testimony as to who opened and who closed the door. Plaintiff says that he did not open or close it. He says further that when he arrived at the car, the door was open. Both plaintiff and Inspector Baker testified, in substance,

that defendant and his brother were out of the car and had their bags open when plaintiff arrived to make his inspection. Defendant says that plaintiff opened the door. As to closing it, defendant testified:

"*Q.* Well, then, after looking in there, did he (plaintiff) close the door or—?

"*A.* Well, I thought he did; he pushed the door to, anyway, and it made a metallic noise, as though it had shut; *I did not look to see if it was tightly fastened.*   \*   \*   \*

"*Q.* You didn't take a look at the doors?

"*A.* No, I heard a metallic clang.

"*Q.* You heard a metallic clang of some kind?

"*A.* I had seen Mr. Hazen shut the door shut, and it sounded as though it were catching."

There is no direct testimony that defendant opened or closed the car door in question. The conflict between the testimony of defendant and that of plaintiff and Inspector Baker presented a question of fact as to who closed the door. There is testimony from which the trial court, as trier of the facts, could reasonably find that defendant closed the door. From the evidence and the circumstances of the accident a logical and legitimate inference could be drawn that defendant did not properly close the door. Furthermore, a logical and legitimate inference could be drawn that the door swung open and struck plaintiff because defendant had not properly closed it. Such inferences could properly be drawn from the testimony and circumstances of the accident, without resorting to speculation, conjecture, or guess. In *Detroit Trust Co.* v. *Hartwick,* 278 Mich. 139, 151, Mr. Justice BUSHNELL said:

"It is the province of the trial judge in a nonjury case to draw legitimate inferences from the established facts and to weigh the probabilities from such

established facts. *Ginsberg* v. *Burroughs Adding Machine Co*, 204 Mich. 130.''

Mr. Justice FELLOWS, in *Heppenstall Steel Co.* v. *Wabash Railway Co.*, 242 Mich. 464, 468, said:

''This court has uniformly held that cases may be made by circumstantial evidence. This is not the adoption of the rule *res ipsa loquitur*, a rule not favored by this court. It has always been the rule of this jurisdiction that the jury should be permitted to draw legitimate inferences from the established facts.''

See, also, *In re Estate of Miller, supra*; *Manley* v. *Potts*, 286 Mich. 671; *McLeod* v. *Savoy Hotel Co.*, 267 Mich. 352.

In the case of *Young* v. *Yellow Cab Co.*, 118 Pa. Super. 495 (180 Atl. 63), plaintiff was walking on the sidewalk about a foot and a half from the curb. Defendant's cab was being driven along the street near the curb and was passing plaintiff when the rear door of the cab suddenly opened and, swinging over the curb, struck plaintiff. In considering plaintiff's claim for personal injuries the court said, in part:

''It is unusual for the door of a cab to open, while the cab is in motion, and hit a pedestrian who is about a foot and a half in from the curb on the sidewalk. That the door of the cab should swing open and hit the plaintiff, who was on the sidewalk where he had a legal right to be, was an extraordinary and abnormal occurrence. From the facts and circumstances, the jury could draw the legitimate inference that the defendant was negligent. * * *

''Under the circumstances, it was the duty of the defendant to have the cab door properly closed. In the ordinary course of things the accident would not have occurred if due care had been exercised in having the door of the cab properly closed. * * *

"The plaintiff's testimony was sufficient to carry the case to the jury on the question of the defendant's negligence. * * *

"It is admitted that there is no specific evidence that the door of the cab was not properly closed, but from the evidence in its entirety that inference is certainly logical and proper."

See, also, *Johnson* v. *Englehardt*, 256 Ill. App. 557; *Tissue* v. *Durin*, 216 Iowa, 709 (246 N. W. 806).

The present case was heard and judgment entered by the trial court sitting without a jury. In *Hanson* v. *Economical Cunningham Drug Stores, Inc.*, 299 Mich. 434, we said:

"In reviewing a judgment entered by a trial judge sitting without a jury we are limited by the rule laid down in *Jones* v. *Eastern Michigan Motorbuses*, 287 Mich. 619. * * * This rule was recently summarized in *Eagan* v. *Edwards*, 294 Mich. 260, by the following quotation from *Vannett* v. *Michigan Public Service Co.*, 289 Mich. 212, 218:

" 'We have repeatedly said in cases tried without a jury that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the evidence clearly preponderates in the opposite direction.' "

In the present case we cannot say that "the evidence clearly preponderates in the opposite direction." From examination of the record we are satisfied that the judgment was not excessive. Therefore, the judgment of the trial court is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.