*In re* KARCH'S ESTATE.

1. BASTARDS—LEGITIMATION BY SUBSEQUENT MARRIAGE OF PARENTS.
   The subsequent marriage of the parents of a child born out of wedlock results in making the child the father's legitimate child for all intents and purposes (3 Comp. Laws 1929, § 13443).

2. WILLS—OMISSION OF TESTATOR'S CHILD—QUESTION OF FACT.
   Whether or not the omission from will of testator's child, born out of wedlock, but whose mother he married after the death of his first wife, was intentional or because of mistake or accident is a question of fact (Act No. 288, chap. 2, § 13, Pub. Acts 1939).

3. APPEAL AND ERROR—NONJURY LAW CASES—EVIDENCE.
   The Supreme Court does not reverse the decision of a circuit judge upon a question of fact in a nonjury law case unless the

evidence clearly preponderates in the opposite direction as he is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to, draw legitimate inferences and weigh the probabilities from the established facts.

4. WILLS—OMISSION OF TESTATOR'S CHILD—FINDING OF COURT—EVIDENCE.

Finding of circuit judge that omission from will of testator's child, born out of wedlock, whose mother he married and lived with after the death of his first wife, mother of three children who oppose petition to have the omitted child declared entitled to share in estate as though he had died intestate, was intentional and not due to accident or mistake is not disturbed where it appears will was made a few hours before testator, a doctor, underwent a serious operation from which he died a week later, his mentality or memory at time will was executed is not shown to have been impaired, provision was made in will of sufficient funds to mother for child's care and omission was consistent with testator's carefully observed promise to first wife at her deathbed that he would not reveal to their children his relation to the omitted child (Act No. 288, chap. 2, § 13, Pub. Acts 1939).

5. COSTS—ESTATES OF DECEDENTS—OMISSION OF CHILD FROM WILL.

Costs on petition to have an omitted child declared entitled to share in testator's estate as though he had died intestate are ordered paid out of estate to his heirs who are successful in their opposition to such petition (Act No. 288, chap. 1, § 51, Pub. Acts 1939).

Appeal from Monroe; Golden (Clayton C.), J. Submitted January 2, 1945. (Docket No. 15, Calendar No. 42,886.) Decided April 9, 1945.

In the matter of the estate of Arthur W. Karch, deceased. Catherine Karch, guardian of Laura Jean Marie Karch, petitioned that the court assign to her ward her share as a child of deceased unintentionally omitted from his will. Order setting aside a share in the estate. Edith Evans Karch and Marian Karch McCallister appealed to circuit court. From order that omission was intentional,

plaintiff appeals. Edith Evans Karch and Marian Karch McCallister cross-appeal. Affirmed.

*Golden & Griffin,* for plaintiff.

*Stanley E. Beattie,* for defendants.

BOYLES, J. This is an appeal by Catherine Karch as guardian of Laura Jean Marie Karch, a minor, hereinafter referred to as Laura Jean, from an order entered by the circuit court for Monroe county denying Laura Jean's claim to a share in the distribution of the estate of her father, Dr. Arthur W. Karch. The statute on which Laura Jean bases her claim is as follows:

"When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake or accident, such child, or the issue of such child, shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section." Act No. 288, chap. 2, § 13, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–2 [13], Stat. Ann. 1943 Rev. § 27.3178 [83]) (probate code).

This is an identical re-enactment of section 26, chapter 68, title 16, Revised Statutes of 1846 (2 Comp. Laws 1857, § 2850; 2 Comp. Laws 1871, § 4347; 3 Comp. Laws 1897, § 9286; 3 Comp. Laws 1915, § 13791; 3 Comp. Laws 1929, § 15550).

Dr. Arthur W. Karch at the time of his death in 1940 was mayor of Monroe, the head of Monroe hospital and clinic, and left an estate estimated at net about $100,000. His last will and testament was executed approximately three hours before he underwent a surgical operation from which he died

seven days later. His will provides for certain minor specific legacies, gives to Catherine Karch for life the income from certain property, and gives the residue of the testator's estate to Catherine Karch and his three daughters, Edith, Marian and Nancy, "as provided for by the intestate laws of the State of Michigan." The will makes no mention of Laura Jean.

Dr. Karch had been twice married, leaving three children by his first wife, Edith, Marian and Nancy, defendants and appellees in the instant case, and one child, Laura Jean, born out of wedlock by Catherine who appears as plaintiff and appellant herein as her guardian. Defendants concede that the subsequent marriage between Dr. Karch (after the death of his first wife) and Catherine Houghton resulted in making Laura Jean his legitimate child for all intents and purposes. 3 Comp. Laws 1929, § 13443 (Stat. Ann. § 26.984), in effect at the time of the marriage. Subsequent amendments have no bearing on this question. See Act No. 288, chap. 2, § 83, Pub. Acts 1939, as amended by Act No. 347, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 16289–2 [83], Stat. Ann. 1943 Rev. § 27.3178 [153]).

Dr. Karch's will was filed for probate in the probate court for Monroe county and admitted to probate by waiver of notice and consent of the interested parties. Catherine Karch, having been duly appointed guardian of Laura Jean, petitioned the probate court for an order assigning the same share of the residue of his estate to Laura Jean which she would receive if he had died intestate, relying on the above-quoted statute. Defendants herein opposed the granting of the petition, a hearing was held in probate court and testimony taken. The probate judge held that Laura Jean had been omitted from the will unintentionally by mistake and

accident and entered an order that Laura Jean should share in the estate the same as if Dr. Karch had died intestate. Defendants thereupon appealed to the circuit court where the circuit judge, after a trial without a jury and after taking testimony, held that the omission of Laura Jean was intentional, not by mistake or accident, and entered an order reversing the probate court and denying the petition. From this order plaintiff appeals.

It is admitted that Laura Jean is the child of Dr. Karch, and the only question before us is whether his omission to provide for her in his will was intentional and not made by mistake or accident. This is solely a question of fact. At the outset plaintiff is confronted with the repeated declaration of this court that where issues of fact have been decided by the circuit judge in a law case tried without a jury we do not reverse unless the evidence clearly preponderates in the opposite direction. The circuit judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. *Vannett v. Michigan Public Service Co.,* 289 Mich. 212. It is the province of the trial judge in a nonjury case to draw legitimate inferences and weigh the probabilities from the established facts. *Hazen v. Rockefeller,* 303 Mich. 536. The trial judge who heard the witnesses as trier of the facts is better able to judge of their credibility and the weight to be accorded their testimony, and we do not reverse unless the evidence clearly preponderates in the opposite direction. *Besh v. Mutual Benefit Health & Accident Association,* 304 Mich. 343.

Dr. Karch married his first wife in 1913 and of this marriage the three defendants, Edith, Marian and Nancy, were born. During his marriage to his

first wife, Laura Jean was born in Chicago, Illinois, in 1928, admittedly the then illegitimate child of Catherine Houghton (now Catherine Karch) and Dr. Karch. In her birth record the child was given the name Laura James Williams, as the legitimate child of one Bert Williams. The arrangements for this birth were made by Dr. Karch and his sister, Mrs. Randall, and Dr. Karch signed the birth certificate as the attending physician. Dr. Karch had previously made the arrangements for Catherine Houghton to live with his sister, Mrs. Randall, in Chicago, until the child was born. After Laura Jean was born, Dr. Karch arranged and paid for the maintenance of Catherine Houghton and Laura Jean until some time after the death of Dr. Karch's first wife in July, 1929. He frequently visited Catherine Houghton and Laura Jean in the home he had arranged for them in Toledo and cared for their living expenses. The marriage between Dr. Karch and his first wife was terminated by her death on July 2, 1929. There was testimony that for the last two years their relationship was a happy one and continued as such up to the time of her death. Dr. Karch, one Mrs. Evans a sister of Mrs. Karch, and one Delia Muehlheisen not related, were with Mrs. Karch the night before her death. These two disinterested witnesses testified to a conversation between Dr. Karch and his wife on that occasion. Mrs. Karch was ill in bed and Dr. Karch was holding her hand. One of them testified:

"Marian (Mrs. Karch) was just saying to him or asking him to promise her to keep her children together, and he said, 'I will never allow anybody to separate them, Marian.' She was quiet for a little while and then she turned to him and said, 'What about Catherine's baby, Arthur?' And he said, 'Don't worry, Marian, our children will never know

about it and I will never admit that the baby, that it is mine.' And she was quiet and nothing more was said."

The other witness testified:

"In relation to the substance of that conversation between husband and wife, Marian was asking doctor about the girls and wanted them to stay together all the time and take care of them; he said he would and then she thought for a while and said, 'Arthur, what about Catherine's baby?' He said, 'Don't worry about that, our girls will never know about her.'"

About a month later, August 6, 1929, Dr. Karch married Catherine Houghton at Lockport, Illinois, but she did not come into his home in Monroe, Michigan, until about a year later, because Dr. Karch wanted their marriage kept a secret. Also, in August, 1929, Laura Jean was brought from the home in Toledo where she was staying to Dr. Karch's home in Monroe. He identified Laura Jean as his niece, the daughter of his older brother who was ill. Careful safeguards were taken by Dr. Karch against revealing the fact that she was his own child. Laura Jean remained in his home about two months, then was taken into other homes in Michigan and Ohio and finally into the home of some Dominican nuns in New York State, where she was at the time of the doctor's death in 1940. Dr. Karch paid for her care, food, clothing, education and travel until his death in 1940, but she never, after the two months in the summer of 1929, again came into the Karch home in Monroe, although her mother lived there, the wife of Dr. Karch.

Dr. Karch kept faith with his promise made to his first wife on her deathbed that their children should never know that Laura Jean was his child.

During his lifetime they knew Laura Jean only as his niece, and did not know of his paternity until after their father's death. His youngest daughter Nancy and his wife Catherine visited Laura Jean frequently, but Nancy knew Laura Jean only as Dr. Karch's niece. During almost 12 years Dr. Karch continued to maintain Laura Jean and pay all her expenses. He informed the attorney who prepared his will that his three children were Edith, Marian and Nancy, defendants herein. While it is apparent that Dr. Karch knew when his will was executed that a serious operation on him was impending, there is nothing to indicate that his mentality or memory was in any way impaired. The testimony is mainly to the contrary. He dictated the contents of a will which gives no indication that he failed to realize its exact import and effect. Any mention in his will of Laura Jean as his child would have been inconsistent with the course he had pursued for so many years. It is a fair inference that his purpose in omitting Laura Jean from mention in his will was to carry out the course he had pursued during lifetime and the promise he had made to his first wife, to conceal from his daughters the fact that he was the father of Laura Jean. Catherine Karch makes no claim that she herself revealed that fact prior to the doctor's death, she admits that Laura Jean was never told that Dr. Karch was her father and that she was never known under the name of Laura Jean Karch.

Appellant's counsel argue that in the absence of any proof that Dr. Karch had Laura Jean in his thoughts when he made his will, it must be assumed that he forgot her entirely—in other words, that he "forgot to remember" Laura Jean. In view of the undisputed fact that Dr. Karch remembered Laura Jean so consistently during his lifetime, and by his

will made ample provision whereby Catherine might carry on his task of caring for Laura Jean after his death, there is little basis for counsel's assumption that the doctor completely forgot to remember Laura Jean when he made his will. It is more logical to conclude that he preferred to avoid any act which might lead to revealing the secret skeleton in his closet.

We agree with the circuit judge that the testator's failure to mention Laura Jean in his will was intentional, and that such omission was not made by accident or mistake. Certainly the evidence does not clearly preponderate in the opposite direction. In view of this conclusion, we need not discuss other questions raised by appellees.

The order of the circuit court is affirmed. Appellees may have costs of all courts, to be paid out of the estate. Act No. 288, chap. 1, § 51, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-1 [51], Stat. Ann. 1943 Rev. § 27.3178 [51]).

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.