SAGINAW FURNITURE SHOPS, INC., *v.* WOLVERINE
FINISHES CORPORATION.

1. APPEAL AND ERROR—NONJURY CASE—PREPONDERANCE OF EVIDENCE.
The trial judge in a nonjury case is the trier of the facts and
may give such weight to the testimony as in his opinion it is
entitled and the Supreme Court does not reverse unless the
evidence preponderates in the opposite direction.

2. SAME—NONJURY CASE—EVIDENCE.
The decision on appeal in a nonjury case as to whether the evi-
dence preponderates in the opposite direction from the finding
of the trial judge must turn on the evidence presented at the
trial.

3. SALES—BREACH OF WARRANTY—NONJURY CASE—EVIDENCE—
FINISHES.
Finding of circuit judge that plaintiff had failed to establish
that defects in finishes on radio cabinets were caused by de-
ficiencies in materials furnished and sold by defendant or by
breach of its warranty in that regard *held,* not against the
preponderance of the evidence even including evidence exclud-
ed by the trial court.

Appeal from Kent; Brown (William B.), J. Sub-
mitted January 14, 1953. (Docket No. 55, Calendar
No. 45,633.) Decided June 8, 1953.

Action by Saginaw Furniture Shops, Inc., a cor-
poration, against Wolverine Finishes Corp., a cor-
poration, for damages caused by furnishing of mate-
rials alleged to be defective. Cross-action by de-
fendant against plaintiff for money due. Judgment
for defendant. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 3 Am Jur, Appeal and Error § 897 *et seq.*

*Amberg, Law & Buchen,* for plaintiff.

*William J. Branstrom* and *Alexander, Cholette, Buchanan, Perkins & Conklin (Edward D. Wells,* of counsel), for defendant.

DETHMERS, C. J.   This is suit for breach of a warranty that finishing materials sold by defendant to plaintiff, for use in the manufacture of radio cabinets, would meet certain requirements and produce specified end results.   The court, sitting without a jury, entered judgment for defendant, based upon a finding that plaintiff, in finishing the cabinets, had not used the products furnished by defendant in the manner agreed between the parties and as contemplated in the warranty, but, instead, had substituted for one of defendant's materials one of its own, without defendant's consent.   There was testimony that the use of the substituted material could have caused the defects complained of in the finished cabinets. The court concluded, accordingly, that plaintiff had failed to establish that those defects were caused by deficiencies in materials furnished by defendant or by breach of its warranty in that regard.   Plaintiff appeals, contending, *inter alia,* that its use of the substituted material was at the express direction of defendant and that the court's finding to the contrary was against the clear preponderance of the evidence.

Defendant agreed to send one Fischer, employed in its sales and service division, to plaintiff's plant to supervise the finishing job.   The finishing materials sold by defendant to plaintiff included stain, filler, filler reducer, sealer and lacquer, in quantities sufficient to finish 1,000 cabinets.   In finishing cabinets, the first operation is to apply the stain.   Next, the filler is sprayed on and rubbed in for the purpose of filling wood pores.   It comes in paste or jelly form

and requires mixing with a filler reducer or thinner to reduce it to a consistency capable of being used in a spraying machine. Plaintiff's employees mixed a quantity of the filler and the filler reducer supplied by defendant. They testified that the mixture curdled and could not be used in the sprayer. Thereafter they thinned the filler with naphtha and sprayed the cabinets with that mixture. Does the evidence clearly preponderate against the trial court's finding that plaintiff's use of naphtha was without defendant's consent?

Defendant's employee, Fischer, testified that he had nothing to do with the compounding of the formula for the filler or with the preparation of the materials sold by defendant to plaintiff, but that this had been done by defendant's chemists; that he went to plaintiff's plant, as directed by defendant, to supervise the finishing of the thousand cabinets, arriving there about 11 a.m. on a Monday and remaining there for about a week; that when he arrived plaintiff's employees were already engaged in finishing the cabinets; that they informed him that they were using naphtha rather than defendant's filler reducer and that he told plaintiff's general manager, Neymeiyer, that the use of naphtha would be plaintiff's responsibility and not his and that that took away his supervisory authority; that Neymeiyer replied that they were going to go on with the use of naphtha and that they did so; that he (Fischer) never consented thereto.

One Black, foreman in charge of plaintiff's finishing room when the thousand cabinets were being finished, testified that finishing of the cabinets had been begun a couple of days before Fischer's arrival; that naphtha had been used instead of defendant's reducer; that one of plaintiff's finishing foremen, Korbein, had made the change to naphtha; that

he did not recall that Fischer ever authorized the change.

Korbein testified that Neymeiyer and plaintiff's plant superintendent, Lantinga, not Fischer, instructed him in regard to the mixing of the filler and reducer supplied by defendant; that they had started finishing cabinets before Fischer's arrival; that plaintiff had always used naphtha previously as a filler reducer in certain types of fillers.

One Fall, supervisor of filling operations in plaintiff's plant, who supervised the mixing of the filler with naphtha, testified that he was instructed to do so by Korbein, but stated that Fischer was present at the time.

Korbein, Fall and Lantinga testified that, when it was discovered that defendant's filler and reducer would not mix, operations were held up until Fischer arrived; that he then supervised the mixing of several batches, using in some instances other reducers on hand; that, finally, at his directions, naphtha was tried and used from then on. Lantinga and Neymeiyer denied that Fischer had warned them that use of naphtha would be plaintiff's responsibility.

Plaintiff points to the following facts and circumstances as corroborative of the testimony of its witnesses on the disputed point: (1) Fischer arrived at plaintiff's plant to supervise finishing of the thousand cabinets; (2) Fischer admitted that when he was told that naphtha was being used he made no test at plaintiff's plant to determine whether the filler and reducer supplied by defendant would have worked properly; (3) Fischer admitted that upon learning of plaintiff's substitution of naphtha he did not immediately thereafter notify defendant thereof; (4) Fischer admitted that he did not order the use of naphtha stopped nor did he leave plaintiff's plant in consequence thereof; (5) Fischer stayed on at plaintiff's plant and continued to give

advice on the finishing of the cabinets; (6) after de-fects in the finish on the cabinets appeared, representatives of plaintiff and of defendant met to discuss the situation, at which time no mention was made of the fact that naphtha had been used; and instead of blaming the use of naphtha immediately for the defects defendant had parts of cabinets sent to its plant for examination and later furnished other materials for the purpose of fixing up the defects; (7) plaintiff relied entirely on defendant's skill and judgment in devising a formula for finishes to meet plaintiff's needs and requirements and on defendant's warranty that its materials would work properly, as well as on the supervision of Fischer in applying the finishes, in view of all of which it would be illogical to conclude that plaintiff would disregard Fischer's instructions and rely on its own judgment to substitute naphtha for defendant's reducer. Plaintiff insists that these facts not only corroborate the testimony of its witnesses but combine therewith to create a clear preponderance of the evidence in favor of plaintiff's contention that the naphtha was used at Fischer's express direction.

On the other hand, defendant contends that the testimony of its witnesses, Fischer and Black, finds support in the following: (1) That plaintiff's witnesses admitted, in varying degrees, that the finishing of some of the cabinets and the mixing of filler was begun before Fischer arrived at plaintiff's plant; (2) that plaintiff offered no testimony to explain what mixture of filler had been used to spray cabinets before Fischer arrived; (3) that naphtha had always been used in plaintiff's plant previously as a reducer in certain types of fillers; (4) that plaintiff's finishing foreman admitted that it was plaintiff's officers and not Fischer who had instructed him on how to mix defendant's products; (5) that plaintiff's supervisor of filling operations admitted that he

mixed the filler with naphtha at the direction of plaintiff's finishing foreman; (6) that Fischer was not a chemist, but merely employed in defendant's sales and service department, and that it would be illogical to assume that he would have been authorized by defendant to change the formula or to direct the use of naphtha after defendant and its chemists had made extensive studies of plaintiff's finishing methods and needs, devised formulae designed to meet requirements and warranted that they would do so.

In *Brady* v. *Central Excavators, Inc.,* 316 Mich 594, we said:

"Were this an equity case which we would hear *de novo,* we might have entertained some doubt as to the correctness of the judgment. In a case tried by a judge without a jury, however, the judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to, and the Supreme Court does not reverse unless the evidence preponderates in the opposite direction. *Hazen* v. *Rockefeller,* 303 Mich 536; *In re Karch's Estate,* 311 Mich 158."

Plaintiff aptly says, "While the rule to be followed in reviewing findings of fact by a court without a jury is simply stated, the decision in each case must turn on the evidence presented at the trial." The crucial fact at bar is sharply disputed by the direct testimony of opposing witnesses. In addition, there are circumstances tending to support plaintiff's version and others corroborating that of defendant. An examination of the entire record leads us to conclude that, as stated in *Flat Hots Co.* v. *Peschke Packing Co.,* 301 Mich 331:

"We cannot say that this finding is against the preponderance of the evidence. There is testimony to support either claim and the determination of the

issue depends upon which testimony to believe. We are not ordinarily inclined to substitute our conclusion for that of the trier of the facts where the facts are in such dispute that reasonable minds might differ on the result. *Buhler* v. *City of Detroit,* 274 Mich 139. In law cases tried without jury, the trial court is the judge of the credibility of the witnesses. *Toussaint* v. *Conta,* 292 Mich 366. We examine the record to ascertain whether the findings are against the preponderance of the evidence. *Knaggs* v. *Lewis,* 287 Mich 431. In the case at bar, the finding is not against the preponderance of the evidence and it will not be disturbed by this Court. See *Hekman Biscuit Co., for use and benefit of Royal Indemnity Co.,* v. *Commercial Credit Co.,* 291 Mich 156."

Our view in this regard would not be altered by consideration of testimony excluded by the trial court.

Our decision of the matter above considered obviates the necessity for determination of other questions raised.

Judgment of no cause for action on plaintiff's declaration and for $2,514.29 in favor of defendant on its cross-declaration for the cost of materials supplied by it to plaintiff is affirmed, with costs to defendant.

ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.