BRADY v. CENTRAL EXCAVATORS, INC.

1. CONTRACTS—TIME.

Time *held*, of the very essence of contract to furnish certain materials and perform certain work on streets in war-time housing project notwithstanding no provision or reference to it was made in purchase order which defendant claimed represented the entire contract of the parties.

2. SAME—TEST OF COMPLETENESS.

The test of the completeness of the writing proposed as a contract is the writing itself; so if it bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, and it is reasonable to conclude that the parties have therein expressed their final intentions in regard to matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions, but if the writing shows its informality on its face, there will be no presumption that it contains all the terms of the contract.

Merger by informal writing, see 2 Restatement, Contracts, § 447. As to integration of agreements, see 1 Restatement, Contracts, §§ 237–240.

3. EVIDENCE—ORAL AGREEMENTS PRIOR AND CONTEMPORANEOUS TO
WRITING—PAROL EVIDENCE.

Where a written memorandum or agreement does not contain the
entire contract between the parties, prior and contemporaneous
agreements and conversations may be shown in order to prove
what the whole contract was.

4. CONTRACTS—STATUTE OF FRAUDS—PAROL EVIDENCE.

Where a contract not required by the statute of frauds to be in
writing to be binding rests partly in writing and partly in
parol, the whole is regarded as a parol agreement, and may
be proved by oral testimony, and the jury are to determine its
terms from the whole testimony.

5. SAME—MERGER OF ORAL AGREEMENTS INTO WRITTEN CONTRACT.

Where parties to an agreement have entered into a written con-
tract covering a particular subject matter, all prior negotia-
tions pertaining to that subject are merged in the written
contract and parol evidence is inadmissible to show that the
contract does not conform with verbal agreements made prior
to its execution.

6. SAME—UNEXPRESSED TIME OF PERFORMANCE—PRESUMPTION OF
REASONABLE TIME.

When a written contract is silent as to time of performance, a
reasonable time is to be presumed without reference to parol
evidence.

7. SAME—TERMS OF CONTRACT—EVIDENCE—WRITINGS.

In nonjury action for damages under contract, finding of trial
court that a verbal contract had been entered into by the
parties prior to any exchange of correspondence and that the
letters and purchase order neither altered nor superseded the
original verbal agreement but were issued in conformance
with it in consequence of which there never was a completely
integrated written contract between the parties *held*, sub-
stantiated by intrinsic evidence contained within the writings.

8. EVIDENCE—RULE OF INTEGRATION.

In considering whether the parties intended a written contract
to be an integration of the entire transaction so as to render
inadmissible parol evidence of additional terms of agreement,
the subject-matter and surrounding circumstances may, and
should, be taken into consideration.

9. SAME—PAROL—UNINTEGRATED PORTION OF AGREEMENT.

Where it appears from surrounding facts and circumstances that
a writing was not an integration of the entire transaction, and

was not intended by the parties to be such, parol evidence may be received to establish that part of the transaction which was permitted by the parties to remain in parol.

10. SAME—CONFIRMATORY LETTERS—MATERIAL TERMS ADDED BY PAROL EVIDENCE.

Where letters exchanged by parties to an oral agreement do not purport to be the formal agreement itself, but only a confirmation of that previously made, nor to cover the entire agreement, but, on the other hand, refer to the oral agreement, the real contract may be shown by parol evidence, though the effect of such proof is to add material terms and conditions to the contract evidenced by the letters.

11. CONTRACTS—ROAD CONSTRUCTION—EXTRAS—PAROL EVIDENCE—TIME.

Plaintiff who had agreed to furnish a certain quantity of gravel and perform certain work in connection with streets in a wartime housing project *held*, entitled to recover for extra work ordered by defendant and not covered by written purchase order as well as additional expense plaintiff was put to by reason of defendant's delay in furnishing a suitable base upon which plaintiff was to spread his materials notwithstanding written purchase order was silent both as to time and matter of furnishing a reasonably firm and stable subsoil.

12. DAMAGES—PRECISE PROOF REQUIRED.

Generally where damages are susceptible of precise proof, such proof must be made.

13. SAME—EVIDENCE—APPROXIMATION.

In action for damages under road construction subcontract because of delay involved due to defendant's failure to furnish proper subsoil upon which plaintiff was to spread material he was to supply, approximation of damages for labor charges on a percentage basis, while not approved, was not open to complaint by defendant where he kept the books showing such charges but failed to produce such evidence.

14. CONTRACTS—DAMAGES—EXTRAS—EVIDENCE.

Allowance made by trial judge in nonjury action under road construction contract for quantity of gravel in excess of that which would normally have been required, *held*, supported by convincing testimony.

15. SAME—DAMAGES—PRODUCTION COSTS—EVIDENCE.

In nonjury action under road construction contract, allowance of production cost of gravel furnished after date when con-

tract was supposed to have been completed *held,* unsupported by sufficient proof that a loss was sustained therefor.

16. EVIDENCE—NONJURY LAW CASE—WEIGHT OF EVIDENCE.
    In cases tried without a jury the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled.

17. APPEAL AND ERROR—NONJURY LAW CASE—PREPONDERANCE OF EVIDENCE.
    In reviewing cases tried without a jury the finding of the trial judge will not be reversed unless the evidence clearly preponderates in the opposite direction.

18. SAME—INTEGRATION OF CONTRACTS—FINDING OF TRIAL COURT— EVIDENCE.
    In nonjury action under road construction contract, finding of trial court that a verbal agreement was entered into by the parties, only parts of which were evidenced by subsequently written letters and a purchase order *held,* sustained by evidence.

19. COSTS—FAILURE OF EITHER PARTY TO PREVAIL.
    No costs are allowed where neither party fully prevails on appeal.·

Appeal from Washtenaw; Sample (George W.), J. Submitted October 8, 1946. (Docket No. 42, Calendar No. 43,350.) Decided January 7, 1947.

Assumpsit by E. P. Brady against Central Excavators, Inc., for damages under road construction subcontract and for extras. Judgment for plaintiff. Defendant appeals. New trial granted unless remittitur filed in trial court.

*Burke, Burke & Smith,* for plaintiff.

*Kelly, Kelly & Kelly,* for defendant.

BUTZEL, J. Plaintiff E. P. Brady bases his right to recovery in the instant suit on the claim that on the 3d of July, 1943, he entered into a parol agree-

ment with defendant Central Excavators, Inc., parts of which agreement were subsequently reduced to writing evidenced by letters dated July 3 and July 16, 1943, and a purchase order of the latter date. The letters and purchase order are as follows:

EXHIBIT A.

"Central Excavators
Ypsilanti, Michigan.

*Gentlemen*:

"The following is confirmation on our verbal conversations street work on the Hunkin-Conkey job.

"We have an Austin Western #99 patrol grader and one Austin Western next size smaller than the #99. The smaller grader could be moved onto the job July 6th and the #99 July 7th. It is also possible that if needed we could furnish one or two more graders.

"The rental rates for these machines $640 per month for the #99, and $500 per month for the smaller machine plus all operating expenses. We can supply the operators.

"Before we would care to furnish these machines we will want the purchase order covering the purchase of the gravel work, as we would not want to tie up these machines unless we were going to do the gravel work.

"On the gravel work it is understood that the grades will be furnished to fine grading. There is to be no end movement of dirt. All grade stakes are to be furnished. We will do trenching for gravel, furnish, place and compact gravel and trim shoulders as far as possible with motor patrol grader.

6" Compacted streets at 45¢ per sq. yd.

8" Compacted streets at 58¢ per sq. yd.

"We would strongly urge a top dressing of calcium chloride of 1-1/2¢ per sq. yd. If this can be sold we would furnish everything and apply for .04¢ per sq. yd. additional.

"It is also understood that Central Excavators will carry my payroll from payroll information furnished by me, and deduct actual payroll plus payroll insurance from money due under sq. yd. purchase order contract.

"I will guarantee that we can produce at least 1,000 cu. yds. per day, but we will just have to do the best we can so far as the trucks are concerned. Of course the more we can deliver the less our producing cost will be so you may be assured we will do the very best we can.

"Thanking you for the opportunity of working with you on this work, I am

Yours truly,
(Signed) E. P. BRADY."

EXHIBIT B.

"Central Excavators, Inc.
General Contractor
Willow Run Townsite
Ypsilanti, Michigan.

PURCHASE ORDER No. 764.

July 16, 1943
Project Mich-20046-54
Wayne, Michigan.

"E. P. Brady
825 Dickinson St.,
Flint, Michigan.

"All necessary work to complete approximately 60,000 sq. yd. of gravel drives 6″ compacted thickness, and approximately 100,000 sq. yd. of gravel streets 8″ compacted thickness, at the following unit prices:

"Stabilized gravel drives, 6″ compacted thickness at .45 per sq. yd.

"Stabilized gravel streets, 8″ compacted thickness at .58 per. sq. yd.

"Grade to be furnished to fine grading and all necessary grade stakes and engineering work will be furnished by others.

"There is to be no end movement of dirt.

"You are to do trenching for gravel, furnish, place and compact the gravel and trim the shoulders as far as possible with motor patrol graders, material to be in accordance with gradation requirements of F.P.H.A. specifications.

"You are to furnish necessary motor patrols and rollers and any other equipment needed for this work, and in the event that we use any of the equipment for construction of subgrade or ditches, you will be reimbursed on O.P.A. ceiling monthly rental basis, for the time such equipment is used.

"We will take over your full payroll on this work, deducting same, plus taxes and insurance, from your periodic invoices.

> Central Excavators, Inc.
> By M. D. Obermeyer (Signed)"

Exhibit C.

Central Excavators, Inc.
General Contractors
Willow Run Townsite
Ypsilanti, Michigan

July 16, 1943.

"Mr. E. P. Brady,
825 Dickinson St.,
Flint, Michigan.

*Dear Mr. Brady:*

"We are attaching hereto, our purchase order number 764 covering the material in place for the required work in connection with the roads on the Wayne housing projects, identified as Mich. 20046 and 20054.

"The purchase order is issued in conformance of the terms of your proposal of July 7, 1943, and in accordance with our previous understanding and agreement, we will place on our payroll all of your employees engaged in the construction of the road surface and pay any necessary expenses incurred at

the site, deducting the payroll and expenses from your invoices when submitted.

"Trusting that the above is as agreed and fully satisfactory, we remain,

Yours very truly,
CENTRAL EXCAVATORS, INC.
By M. D. OBERMEYER (signed)
Project Manager."

This litigation arose out of the construction contracts for the war housing project known as "Norwayne" which is the designation given a particular part of the larger Willow Run Housing Project. The Federal Public Housing Authority contracted with the Hunkin-Conkey Construction Company of Cleveland, Ohio, which company is not a party to this action, to undertake the construction of the Norwayne project. The construction company, as prime contractor, entered into a subcontract with the defendant corporation to do certain street construction work in connection with this project. Defendant company sublet a part of its own subcontract to plaintiff. It is the latter subcontract which gives rise to the dispute in this case.

Plaintiff claims that according to the terms of the verbal agreement, defendant promised to furnish, or have furnished

"1. Approximately 60,000 square yards of drives to fine grading for 6″ compacted thickness of gravel; and

"2. Approximately 100,000 square yards of streets to fine grading for 8″ compacted thickness of gravel, together with all necessary grade stakes and engineering work therefor, all to be so prepared that no hand labor of any kind or description would be required of any by the plaintiff; and

"3. The said streets and drives in sufficient quantity in area per day so as to utilize plaintiff's promised output of 1,000 cubic yards of gravel per day."

to accomplish, or have accomplished, all end movement of dirt; to reimburse plaintiff for any of his equipment used for construction of subgrade or ditches at a stipulated rate for the time during which such equipment was used; to take over plaintiff's full payroll for labor; and to pay plaintiff in the manner specified in exhibit B. Plaintiff states that he, in turn, agreed to do the trenching for gravel; furnish, place and compact the gravel, and trim the shoulders of the streets, as far as possible, with motor patrol grader; produce, compact and process 1,000 cubic yards of gravel per day; and furnish the equipment and labor necessary to the completion of the work.

Plaintiff further claims that, in reliance upon defendant's promises, he secured the facilities and hired the labor necessary to complete this work in 40 days, the approximate period required at the rate of 1,000 cubic yards per day; that owing to defendant's failure to furnish sufficient base grade upon which to spread and compact 1,000 cubic yards of gravel per day, the soft and unstable condition of the subsoil, the constant cutting up of finished work by utilities contractors laying pipe, sewers, et cetera, and the use of yet unfinished streets by vehicular traffic, plaintiff was put to great expense and suffered a considerable loss which he seeks to recover from defendants. Finally, plaintiff asserts that, as the result of these untoward conditions, he was required to do additional work not contemplated by the agreement, and that he did so under protest and without waiving his right to extra compensation.

In his bill of particulars plaintiff claimed the net amount owing him was $38,487.42. Prior to trial defendant, in accordance with the provisions of 3 Comp. Laws 1929, § 14269 (Stat. Ann. § 27.998) filed an offer of judgment against itself in the

amount of $3,953.15, which plaintiff declined to accept. The case was tried without a jury. The trial judge found that a verbal agreement had been entered into by the parties, only parts of which had been reduced to writing, and admitted parol evidence to prove its terms. He specifically found that defendant promised plaintiff that it would make available base grade for streets and driveways in such quantity as to utilize 1,000 cubic yards of gravel per day; that such base grade would have a reasonably firm and stable subsoil; and that no handwork would be required of plaintiff in the performance of this undertaking.

The testimony at the trial established the fact that this was a "hurry-up job." The trial judge characterized the project during the period covered by the testimony as being "in a state of complete chaos." Before plaintiff had completed the laying and compacting of the gravel streets and driveways, they were being used by the trucks of the various other contractors and suppliers with the result that they were frequently torn up. The government inspector on this particular project testified that he required plaintiff to repair this damage; and the trial judge found that defendant had also directed plaintiff to repair such damage, without which the work was unacceptable to the government. The testimony further established the fact that the greater part of the street area was soft and unstable; that rather than lose time by filling in with rock, an expensive process, defendant and the government inspector ordered plaintiff to use additional gravel to fill in the soft spots which entailed the use by plaintiff of more materials, time and labor.

The trial court found that had plaintiff been furnished base grade in the agreed upon quantity, he could have completed the job within 40 days, whereas,

under the prevailing working conditions, 155 days were required. Accordingly, the court found that plaintiff had sustained damages arising from the delay caused by defendant's failure to furnish, as agreed, sufficient base grade to utilize 1,000 cubic yards of gravel per day, damages for additional labor and material required to complete the streets and drives which were not furnished, as agreed, with a reasonably firm and stable subsoil, and damages for refinishing streets and drives torn up by the vehicles of other contractors on the project. The trial court assessed these damages in accordance with plaintiff's claims less a few minor adjustments, and entered judgment for plaintiff in the sum of $33,992.07.

Defendant claims on appeal that the purchase order, exhibit B, represents the entire contract between the parties; that the trial court erred in admitting oral evidence to add to its terms; that plaintiff failed to sustain the burden of proving the extent of his true damages; and that the trial judge should have limited plaintiff's recovery to the smaller amount still due and unpaid, as admitted by defendant in the pleadings.

As part of an urgent war-time housing project, there can be little question but that time was of the very essence in plaintiff's work. There was ample testimony establishing the necessity for speed and dispatch in completing the entire project. It was shown that defendant was itself under a contractual obligation to the prime contractor to have the streets ready to turn over to the Federal government by October 30, 1943. And yet, despite the tremendous importance of the time factor in this undertaking, the purchase order is entirely silent on this essential, nor is there any reference to it in any of the other writings.

Plaintiff's letter of July 3, 1943, exhibit A, contains a guaranty that he would produce 1,000 cubic yards of gravel per day.   Manifestly, this was not a gratuitous offering on plaintiff's part; rather, it is indicative that the subject had been discussed during the "verbal conversations" referred to in this same letter.   Defendant's own project manager, Mr. Obermeyer, testified that he himself had raised the question of plaintiff's production capacity at their initial meeting.   In view of defendant's own deadline, it was to be expected that defendant would be concerned with plaintiff's ability to produce a minimum quantity of gravel per day.   Here again, however, the purchase order is silent.

It further appears that defendant had specifically agreed with the prime contractor not to sublet any of its own work without the latter's approval in writing.   It is argued that this accounts for the lack of a formal contract which would have embraced the entire agreement.

The lower court was also persuaded by the fact that plaintiff's letter of July 3, 1943, exhibit A, stated that it was in "confirmation on our verbal conversations" and that defendant's letter of transmittal of July 16, 1943, exhibit C, stated that "the purchase order is issued in conformance of the terms of your proposal of July 7, 1943" (this was an error, the correct date was July 3), which brought the court back to the "verbal conversations" since the plaintiff's "proposal" purported to be no more than confirmation of the conversation.   Moreover, the trial judge was of the opinion that because of the alleged ambiguity contained in exhibit C, *viz.*, whether the clause "and in accordance with our previous understanding and agreement," modified the preceding clause with reference to the issuance of the purchase order or the succeeding clause with

reference to the payroll arrangements, there was additional basis for the admission of parol evidence.

Plaintiff's counsel contend that the rule against the admission of parol evidence to add to, or vary, the terms of a written contract are not applicable inasmuch as the writings in question are a mere informal statement of some and not all of the terms of the agreement. Reference is made to *Brown* v. *A. F. Bartlett & Co.*, 201 Mich. 268, wherein we quoted with approval from Jones on Construction of Commercial & Trade Contracts, § 134, as follows:

"The test of the completeness of the writing proposed as a contract is the writing itself. If this bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, and if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions. If, on the other hand, the writing shows its informality on its face, there will be no presumption that it contains all the terms of the contract. In every case, therefore, the writing must be critically examined in the light of its surrounding circumstances, with a view of determining whether it is a memorial of the transaction."

Counsel for defendant contend that where a contract is reduced to writing all previous parol agreements relating to the same subject matter are merged therein so that such contract cannot rest partly in writing and partly in parol. *Danto* v. *Charles C. Robbins, Inc.*, 250 Mich. 419. Plaintiff, however, stresses his claim that the writings are only evidence of portions of the verbal agreement, are not complete in themselves, and specifically re-

fer to previous conversations and understandings. Reference is made to *Stahelin* v. *Sowle,* 87 Mich. 124, 132, wherein we said:

"It is therefore apparent, from the plaintiff's theory, that the written memorandum or agreement signed by defendant does not contain the whole of the contract between, the parties, and it follows that previous and also contemporaneous agreements and talks may be shown in order to prove what the whole contract was. It is only where the contract is complete in itself, and shows upon its face that it embodies the terms of the agreement, that parol testimony which tends to vary or contradict the writing is excluded, as well as all previous negotiations and understanding. Where, however, a contract which is not required by statute to be in writing to be binding is partly in writing and partly parol, the whole is regarded as a parol agreement, and may be proved by oral testimony, and the jury are to determine from the whole testimony what the terms of the contract are."

We are in accord with appellant in his contention that where parties to an agreement have entered into a written contract covering a particular subject matter, all prior negotiations pertaining to that subject are merged in the written contract and parol evidence is inadmissible to show that the contract does not conform with verbal agreements made prior to its execution. *Wenzel* v. *Kieruj,* 168 Mich. 92; *Quisle* v. *Brezner,* 212 Mich. 254; *Hank* v. *Lamb,* 310 Mich. 81. We are further in accord with appellant that when a written contract is silent as to time of performance, a reasonable time is to be presumed without reference to parol evidence. *Chicago, K. & S. R. Co.* v. *Lane,* 150 Mich. 162; *Stange* v. *Wilson,* 17 Mich. 342; *Coon* v. *Spaulding,* 47 Mich. 162; *Toledo & A. A. R. R. Co.* v. *Johnson,* 55 Mich. 456;

*Ferguson* v. *Arthur,* 128 Mich. 297; *Sloman* v. *National Express Co.,* 134 Mich. 16.

In the instant case, however, there was positive testimony which convinced the trial court that a verbal agreement had been entered into by the parties prior to any exchange of correspondence, and that the letters and purchase order which followed neither altered nor superseded the original verbal agreement, but were issued in conformance with it, in consequence of which there never was a completely integrated written contract between the parties. This is substantiated by intrinsic evidence contained within the writings. As stated in *Cohn* v. *Dunn,* 111 Conn. 342, 346 (149 Atl. 851, 70 A. L. R. 740):

"The fundamental question is one of the intent of the parties. Did they intend to make the writing the repository of their final understanding upon the particular matter of agreement as to which evidence is offered dehors the writing? If so, such evidence must be excluded. If, however, it appears that the parties intended to restrict the writing to specific subjects of negotiation, then other subjects may be proven 'even though they be (as they always are) different from the writing.' 5 Wigmore on Evidence (2d Ed.), § 2431. This intent is to be sought in the conduct and language of the parties and the surrounding circumstances."

In *Danielson* v. *Bank of Scandinavia,* 201 Wis. 392 (230 N. W. 83, 70 A. L. R. 746), Chief Justice Rosenberry, discussing this problem at page 397, stated:

"We are concerned here with the application of the so-called parol evidence rule to the effect that parol evidence is not admissible to vary the terms of a written contract. The real question to be considered in cases of this kind is whether or not the

writing in question was intended by the parties thereto to embody the entire transaction and so to constitute the sole evidence of the agreement entered into by them.   *   *   *

"There is language used in some prior Wisconsin cases which would indicate that whether a writing amounts to an integration of the entire transaction must be determined solely from the writing itself. (Citing cases.)   *   *   *

"However, a careful analysis of these and other cases indicates that in considering whether or not the writing in question was intended by the parties to be an integration of the entire transaction, the subject matter and surrounding circumstances may and should be taken into consideration.   *   *   *

"In numerous Wisconsin cases it has been held that, where applied to the subject matter with which the contract deals, or where it appears from the surrounding facts and circumstances, the writing was not an integration of the entire transaction, and was not intended by the parties to be such, parol evidence may be received to establish that part of the transaction which was permitted by the parties to remain in parol.   *   *   *

"Dean Wigmore aptly says: 'The document alone will not suffice. What it was intended to cover cannot be known until we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered.' "

Reference is also made to *American Bridge Co. v. Crawford* (C. C. A.), 31 Fed. (2d) 708 (68 A. L. R. 1246), the first (A. L. R.) syllabus of which reads as follows:

"Where letters exchanged by parties to an oral agreement do not purport to be the formal agreement itself, but only a confirmation of that previously made, nor to cover the entire agreement, but, on the other hand, refer to the oral agreement, the

real contract may be shown by parol evidence, though the effect of such proof is to add material terms and conditions to the contract evidenced by the letters.''

To like effect are *Ohio Crane Co.* v. *Hicks,* 110 Ohio St. 168 (143 N. E. 388); *Root* v. *Shadbolt & Middleton,* 195 Iowa, 1225 (193 N. W. 634). In the latter case the court held that oral testimony was admissible to prove the agreement as to compensation for gravel hauled, and the hauler's duty to put and maintain it so that other haulers could get in and out, and to maintain the roads in good condition, despite a writing on the general subject matter. The court said (p. 1232):

''It is apparent from the testimony of both Middleton and Twigg that there were certain matters agreed upon orally between them which were not placed in the letter. It conclusively appears in the record that neither Middleton nor Twigg regarded the letter as the entire contract.''

There is no doubt that plaintiff is entitled to recover for any extra work ordered by defendant and not covered by the purchase order. Assuming that the alleged verbal contract was entered into by the parties, as found by the lower court, and that the writings do not represent a fully integrated written contract, plaintiff is also entitled to recover for all additional expense he was put to on account of the delay. See *Beskin* v. *State,* 119 Misc. 209 (Court of Claims) (195 N. Y. Supp. 951) (affirmed without opinion in 206 App. Div. 784 [200 N. Y. Supp. 915]); *Indianapolis Northern Traction Co.* v. *Brennan,* 174 Ind. 1, 24 (87 N. E. 215, 90 N. E. 65, 91 N. E. 503, 30 L. R. A. [N. S.] 85), wherein the court stated:

''The contract under which they were obligated required that all of the work which they had con-

tracted to perform should be completed by August 15, 1903. Certainly, when appellant company obligated these parties to do and finish the work within a fixed period, it was its duty to afford them a fair and reasonable opportunity to begin and complete the work; or, in other words, under the mutual contract entered into between it and them, it became its duty to furnish the required material, secure the right of way, and have the road grade in readiness as required by the contract, so that appellees, in the exercise of reasonable diligence, might begin to finish the work within the prescribed period without being subjected to unreasonable cost or expense on account of the default, delays, and hindrance of appellant company. Its default or failure in these respects would subject it to liability for whatever damages appellees might reasonably sustain on that account.''

To like effect see *Sartoris* v. *Utah Construction Co.* (C. C. A.), 21 Fed. (2d) 1; *Keahon Bros.* v. *Blank,* 161 Misc. 874 (292 N. Y. Supp. 257).

We are not unmindful of the recent decision of the United States Supreme Court in the case of *United States* v. *Howard P. Foley Co.,* 329 U. S. 64 (67 Sup. Ct. 154, 91 L. Ed. 135) (No. 50, October Term, 1946), handed down on November 25, 1946. In that case, a contracting firm had agreed to complete its part of the construction of an airfield in 120 days but was delayed an additional 157 days because of the unstable subsoil conditions encountered, and sought to recover damages from the Federal government for the considerable extra cost sustained on the ground that the government had not provided the conditions necessary for the completion of the work within the period stipulated in the contract. Unlike the case at bar, there was no claim that any other agreement existed other than the written contract under which the work was done. That contract was complete in

itself. It did not specifically require the government to maintain conditions that would enable the contractor to complete its work in 120 days, but on the contrary contained clauses that indicated a delay might be encountered. In the instant case the trial court found that according to the terms of the parol agreement entered into by the parties, defendant had promised to maintain conditions, including the furnishing of reasonably firm and stable subsoil, so as to enable plaintiff to complete his work in approximately 40 days.

The trial court allowed the sum of $9,750 for excess labor charges. This figure was arrived at by taking 75 per cent. of the total wage figure, on the theory that all labor charges after September 1, 1943, were properly chargeable to defendant. It is a general rule that where damages are susceptible of precise proof, such proof must be made. *Liquidating Holding Corp.* v. *Mortgage & Contract Co.,* 258 Mich. 476. According to the terms of the agreement, however, defendant was to take over plaintiff's payroll, *cf.* exhibits B and C. It is plaintiff's claim, therefore, that if defendant was not satisfied with the accuracy of the method of approximating total extra labor charges introduced by plaintiff and adopted by the trial court, it should have produced its own books covering these transactions. We do not entirely approve of the approximation method used in making the computation, but believe that defendant cannot complain if it made the payments, kept the books showing them and failed to produce the necessary evidence that it had in its possession.

The court allowed $8,747.48 as payment for 5,301½ cubic yards overrun, the quantity of gravel in excess of what should normally have been required, at $1.70 less certain deductions. The Federal Public

Housing Authority had previously acknowledged an overrun of 3,668 yards. The trial court accepted the higher figure for which there was convincing testimony.

The lower court also allowed plaintiff the sum of $7,546.89 representing production costs of 19,351 cubic yards at 39 cents per cubic yard produced after September 1st. Plaintiff had an agreement with the owners of a gravel pit to divide equally profits from the sale of gravel. The record makes it extremely doubtful whether there was any loss resulting from the transaction. Plaintiff and the owners of the gravel pit were producing gravel for other accounts as well as for defendant. The proof in regard to the amount of the loss is not at all convincing. It is not shown that plaintiff was unable to trench, screen and stockpile gravel for defendant's account. If this had been done, the alleged excess production costs could have been greatly minimized. We are not at all satisfied from the record that there was sufficient proof to sustain the charge of $7,546.89.

Were this an equity case which we would hear *de novo,* we might have entertained some doubt as to the correctness of the judgment. In a case tried by a judge without a jury, however, the judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to, and the Supreme Court does not reverse unless the evidence preponderates in the opposite direction. *Hazen* v. *Rockefeller,* 303 Mich. 536; *In re Karch's Estate,* 311 Mich. 158. Thus we accept the trial court's finding that a verbal agreement was entered into by the parties, only parts of which are evidenced by exhibits A, B and C. We do not believe, however, that the charge of $7,546.89 for the production costs of gravel after September 1st is proper; and the judg-

ment should be decreased by that amount. If the plaintiff will consent to a remittitur within 30 days of $7,546.89 and file such remittitur in the circuit court to which this case is remanded, the judgment will be affirmed as modified. If, however, he does not file such remittitur within 30 days in the circuit court as ordered, there being very close questions of fact involved in the case, a new trial is ordered. Neither party having fully prevailed, no costs will be allowed.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.