BENNETT v EISEN

1. DEEDS—EVIDENCE—PAROL EVIDENCE—WRITTEN AGREEMENTS—
   ORAL AGREEMENTS—ADMISSIBILITY—EXCEPTIONS.
   Parol evidence tending to show a contemporaneous oral agree-
   ment which is contradictory of a deed is inadmissible where the
   deed is absolute in its terms without any indication expressed
   or implied of a condition or reservation; but parol evidence may
   be admitted where a deed or contract is ambiguous, where a
   deed constitutes only part of the performance called for in an
   underlying contract, or where fraud, actual or constructive, is
   involved.

2. CONTRACTS—OPTIONS—CONSTRUCTION—TIME LIMITS—REASONABLE
   TIME.
   Options should be strictly construed and, absent specific time
   limits, are exercisable only for a reasonable period of time.

Appeal from Cheboygan, Joseph P. Swallow, J.
Submitted June 9, 1975, at Lansing. (Docket No.
21665.) Decided September 11, 1975.

Complaint by Allen C. Bennett and William M.
Bennett against Robert I. Eisen and Margaret E.
Eisen to quiet title to real property. Judgment for
plaintiffs. Defendants appeal. Affirmed.

*Charles C. Menefee,* for plaintiffs.

*Federlein, Grylls & McNelis, P. C.,* for defend-
ants.

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur 2d, Deeds § 271.
[2] 17 Am Jur 2d, Contracts §§ 60, 61, 88.

Before: Allen, P. J., and D. F. Walsh and O'Hara,* JJ.

Allen, P. J. On September 1, 1953, Mr. and Mrs. Eisen entered into a land contract for the purchase of certain land in Cheboygan County by N. Lucille Bennett, mother of plaintiffs herein. The description of the property in the land contract specifically excepted certain property west of the tract to be purchased by the Eisens. On the same day that the contract was entered into, Mrs. Bennett wrote a letter to the Eisens granting them an option on the property which was excepted in the land contract. The letter recited no consideration for the option but provided:

"This is to advise that in accordance with our understanding of this date, regarding the sale of the Black Lake property, you are to have the first option to purchase the 200 feet immediately west of the property sold to you at this time in the event that I decide to sell said parcel at any time in the future.

"The purchase price is not to exceed Two Thousand ($2,000.00) Dollars if the property remains unimproved. Should buildings be erected on this site, we are to determine a fair market value of the buildings at the time of sale."

In 1968, Robert Eisen assigned to his wife his interest in the option on the Black Lake property. She recorded this option on November 13, 1968.

In March of 1969, Mrs. Bennett, now Mrs. Moss, conveyed the excepted property, which had remained unimproved, to her two sons as a gift. Some three years later the two sons listed the property and in October 1972 received an offer of

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

$15,500 cash. Because of the recorded option of Mrs. Eisen, the intended purchaser refused to complete the deal until the cloud on the title was removed. As a result, the sons brought an action to quiet title in the circuit court on March 30, 1973.

At trial, the defendant attempted to introduce evidence to demonstrate that the option agreement was part of the land contract, and thus the consideration recited in the land contract supported the option. The trial judge allowed the defendants to make a separate record, but did not consider that evidence in his finding of fact. The trial court found for the plaintiffs and quieted the title in them.[1] Defendants appeal from that judgment.

The litigants contend that the decisive issue in this appeal is whether the trial court erroneously applied the parol evidence rule by excluding testimony which would have shown that the option agreement was part of the land contract. The general rule is that where a deed is absolute in its terms without any indication expressed or implied of a condition or reservation, parol evidence tending to show a contemporaneous oral agreement which is contradictory of the deed is inadmissible:

---

[1] "Now the option of the date of September 1, 1953, of the same date as the land contract, requires the grantor of the alleged option to do nothing different, nothing contrary to the terms of the land contract as expressed in it as the same terms in the deed. Therefore, the Court finds, as a matter of law that the deed or any agreement in the deed, or the agreement as to the sale of the overall parcel of land, nothing being changed, the Court finds that there cannot be interpreted from these two instruments any consideration that is referable to the alleged option, and as the Court has listened carefully to the testimony, it fails—it has failed to find from the testimony presented herein, any other understanding between the parties or consideration that has changed to support the alleged option. So, therefore, the Court determines as a matter of law that the option is invalid because of absence of consideration, and the Court, therefore, grants the motion to petition of the plaintiff to quiet title and judgment to that effect may be presented."

"The decisive issue here is whether or not parol evidence was admissible to contradict terms of the quitclaim deed given by the plaintiffs. Neither fraud, mistake, nor lack of consideration is claimed here. The quitclaim deed executed by plaintiffs to defendant Capitol Plaza was absolute in form and therefore parol testimony was inadmissible to contradict its terms. The case comes within the rule recited in *Wild v Wild,* 266 Mich 570. In that case, it was held, among other things, that where sons of a widow quitclaimed interests in their deceased father's estate to the mother, allegedly pursuant to a parol contract of equal distribution upon her death, parol testimony was not admissible to contradict or add to the terms of a quitclaim deed absolute in form." *Tepsich v Howe Construction Co,* 373 Mich 404, 407; 129 NW2d 398 (1964).

This general rule is not without a number of exceptions. Among these are situations where the deed or contract is ambiguous, *Taylor v Taylor,* 310 Mich 541; 17 NW2d 745 (1945), where the deed constitutes only part of the performances called for in the underlying contract, *Goodspeed v Nichols,* 231 Mich 308; 204 NW 122 (1925), or where fraud, actual or constructive, is involved, *Tepsich v Howe Construction Co, supra.* For other exceptions to the rule see Anno: *Admissibility of parol evidence with respect to reservations or exceptions upon conveyance of real property,* 61 ALR2d 1390, 1393.

Defendants contend they fall within the exception permitting an explanation of an ambiguity because the parcel of land at issue is described differently in the deed than in the land contract.[2] On this issue the trial judge made a finding of fact

[2] Expanding this argument, appellants claim that the parcel excepted was to be 200 feet on the shoreline but the deed conveyed 200 feet at the north end of the property which, because the shoreline runs in a southeasterly direction, had the effect of excluding 313 feet of frontage.

that the deed only described in the metes and bounds language of a surveyor what was described in the land contract. We agree. The land contract never referred to 200 feet of shoreline but only to a parcel "200 feet east of and running parallel with the westerly line of said property".

Relying strongly on *Brady v Central Excavators, Inc,* 316 Mich 594; 25 NW2d 630 (1947), defendants claim that where there are several writings and memoranda between the parties, the complete contract may be gathered from all the letters and writings and that if the land contract, the letter option and a second letter confirming the option were taken into consideration, it would be clear that the $38,000 paid for the property actually conveyed, was also consideration for the option. Without questioning the doctrine of *Brady,* we reject its applicability. *Brady* was not a case involving the statute of frauds or a deed absolute in form given in fulfillment of an earlier contract. Instead, it involved a series of letters between the parties which, on their face, appear not to govern the entire agreement. As a consequence the Court found there never was a completely integrated written contract.

Even if we assume, arguendo, that parol evidence should have been admitted, and would have shown consideration was present, we still conclude the trial court reached the correct result. The option letter September 1, 1953, was an option in the event Mrs. Bennett decided to sell. The second letter dated January 6, 1964, which was made a part of the separate record but apparently disregarded by the court, reaffirms the limited breadth of the option.

"Dear Sir: In answer to your letter of December 27—1963—in regard to my property at Black Lake—just to

the west owned by Mr. Eisen—after talking with my son in Florida, we have decided not to sell at this time. We would like to put a small cottage on this property— where we all can vacation in the summer. We could not purchase any other lake property closer to Detroit for this price or even close to it.

"Whenever we are *ready to sell,* will certainly give Mr. Eisen option to purchase the property—as to our agreement." (Emphasis supplied.)

Both on direct and on cross-examination, Mrs. Bennett (Moss) consistently claimed she never wanted to sell the property, that she loved the North and hoped to build a cottage on the parcel but because of advanced age she finally gave the land to her sons without consulting them but thinking "it would be nice for them to put up a cottage up there for themselves, or all of us, maybe". As in *Waterstradt v Snyder,* 37 Mich App 400; 194 NW2d 389 (1971), we find the option language means exactly what it says, nothing more nothing less: namely, that if Mrs. Bennett ever decided "to sell" the plaintiffs could purchase. When she gave the land to her sons she still had aspirations that they would build a cottage in which she could visit. The fact that the sons held the property some three years before listing it for sale suggests that Mrs. Bennett was not using the gift to her sons as a circuitous route for sale. Options should be strictly construed and, absent specific time limits, are only for a reasonable period of time. *Glocksine v Malleck,* 372 Mich 115, 118; 125 NW2d 298 (1963), and 1A Corbin, Contracts, § 273, footnote 44 p 599. At the time of trial the option had not been exercised for 20 years. Under the circumstances we are not convinced that we would reach a different result sitting in place of the trial court. *Greenspan v Rehberg,* 56 Mich App 310; 224 NW2d 67 (1974).

Affirmed, costs to plaintiffs.