BRAUER v HOBBS

Docket No. 80036. Submitted June 5, 1986, at Grand Rapids. Decided
    May 20, 1986.

In 1976, Leonard and Glenna Wilson, husband and wife, sold a
    parcel of property to Robert Brauer and George Wigglesworth.
    The purchase agreement also stipulated that Brauer and Wig-
    glesworth would be given an option to purchase a second
    parcel. The option was for an indefinite time and the Wilsons
    retained the power to terminate the option at any time. In
    1977, Brauer assigned his interest in the purchased parcel to
    Wigglesworth, and Wigglesworth assigned his interest in the
    optioned parcel to Brauer. In 1980, Leonard Wilson died. In
    1981, Glenna Wilson informed Brauer that she was cancelling
    or revoking the option agreement. Brauer filed a notice of
    exercise of option and a notice of lis pendens with the county
    register of deeds and filed suit against Glenna Wilson in
    Allegan Circuit Court seeking specific performance of the op-
    tion agreement. Mrs. Wilson counterclaimed to quiet title. The
    court, George R. Corsiglia, J., entered a verdict of no cause of
    action as to plaintiff's claim and granted defendant's request to
    quiet title, finding that the agreement was not an option
    contract, that the agreement was void because it lacked mutu-
    ality of assent, and that the agreement was void because by its
    terms it was for an indefinite period of time. Plaintiff appealed.
    Glenna Wilson subsequently died and Kathryn M. Hobbs, per-
    sonal representative of the estate of Glenna I. Wilson, has been
    substituted for Mrs. Wilson. *Held:*

    1. The agreement did not lack mutuality of assent. The
    parties understood that plaintiff would have the first opportu-
    nity to buy the property when and if the Wilsons decided to sell
    it.

    2. The trial court correctly determined that the agreement is

REFERENCES

Am Jur 2d, Contracts §§ 22, 75, 241, 248, 250, 254, 275, 365, 486,
    504.
What constitutes anticipatory repudiation of sales contract under
    UCC § 2-610. 1 ALR4th 527.

not an option contract. The agreement was nothing more than a right of first refusal.

3. Specific performance, as sought by plaintiff, is not an available remedy, since Mrs. Wilson had no obligation to sell her land and could not be compelled to do so.

4. The doctrine of anticipatory breach is not applicable to the circumstances found in this case. That doctrine applies only to bilateral contracts, those which embody mutual and interdependent conditions and obligations. There is no mutuality of obligation in first refusal agreements.

5. The trial court erred in finding that the agreement was void because it was for an indefinite period of time. The absence of specific time limits does not render the agreement void. Rather, the courts under these circumstances will construe an agreement to be for a reasonable period of time. Ordinarily, the case would be remanded to the trial court for a determination of what period of time is reasonable under the circumstances. However, the death of Mrs. Wilson renders remand unnecessary. The right of first refusal agreement terminated upon her death.

6. The judgment of the circuit court granting defendant's request to quiet title and denying plaintiff's request for specific performance is affirmed.

Affirmed.

1. APPEAL — FINDINGS OF FACT — CLEAR ERROR.

A trial court's findings of fact will not be set aside unless they are clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made.

2. CONTRACTS — AMBIGUITIES — JUDICIAL CONSTRUCTION.

In no event is an ambiguity in a contract to result in a declaration that the contract is void; rather, the ambiguity focuses and intensifies the court's duty to ascertain the intent of the parties in order that the agreement be carried out.

3. CONTRACTS — AMBIGUITIES — EVIDENCE — PAROL EVIDENCE.

Extrinsic evidence, including parol evidence, is admissible to clarify the meaning of any ambiguous contract.

4. CONTRACTS — AMBIGUITIES — JUDICIAL CONSTRUCTION.

Ambiguities in a contract will be construed against the party drafting the contract.

5. CONTRACTS — RIGHT OF FIRST REFUSAL AGREEMENTS — OPTION CONTRACTS.

An agreement whereby one party promises that when it is ready

to sell a certain thing it will not sell to anyone until it has made an offer to sell to the other party is a right of first refusal, not an option contract.

6. CONTRACTS — RIGHT OF FIRST REFUSAL AGREEMENTS — SPECIFIC PERFORMANCE.

Specific performance is not an available remedy to force a property owner to sell her property where she conveyed a right of first refusal to another party agreeing that when and if she were to decide to sell her property she would make an offer to sell to that party before selling to anyone else; the owner has no obligation under that agreement to sell the property and cannot be compelled to do so.

7. CONTRACTS — BREACH OF CONTRACT — ANTICIPATORY BREACH.

The doctrine of anticipatory breach of contract applies where a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform; the innocent party under such circumstances has the option to either sue immediately for breach of contract or wait until the time of performance.

8. CONTRACTS — BREACH OF CONTRACT — ANTICIPATORY BREACH — BILATERAL CONTRACTS.

The doctrine of anticipatory breach of contract generally applies only to bilateral contracts, those which embody mutual and interdependent conditions and obligations.

9. CONTRACTS — RIGHT OF FIRST REFUSAL AGREEMENTS — ANTICIPATORY BREACH.

The doctrine of anticipatory breach of contract does not apply to first refusal agreements because there is no mutuality of obligation in such agreements.

10. CONTRACTS — TIME FOR PERFORMANCE.

It is essential to the validity of any contract, including an option agreement, that a definite time for performance either be stated in the contract or be ascertainable from the contract's expressed or implied provisions.

11. CONTRACTS — RIGHT OF FIRST REFUSAL AGREEMENTS — TIME LIMITS.

First refusal agreements in Michigan, like option agreements, must be for a definite period of time, but the absence of specific time limits will not render an agreement void; the courts will construe the agreement to be for a reasonable period of time.

12. CONTRACTS — RIGHT OF FIRST REFUSAL AGREEMENTS — TERMINA-
    TION AT DEATH.

   An agreement whereby a property owner conveyed to another
   party the right of first refusal to her property when and if she
   ever decided to sell the property terminated upon her death
   where it required her personal volitional act in her lifetime
   and there was no clear evidence of contrary intent.

*Coupe & Van Allsburg, P.C.* (by *William W.
Coupe* and *Jon A. Van Allsburg*), for plaintiff.

*Scholten, Fant & Marquis* (by *D. Scott Stuart*),
for defendant.

Before: R. M. MAHER, P.J., and BEASLEY and
SHEPHERD, JJ.

PER CURIAM. Plaintiff appeals as of right from a
judgment of no cause of action in this suit for
breach of contract.

In 1976, Glenna Wilson and her husband, Leo-
nard Wilson, were the owners to two parcels of
land located on the Kalamazoo River in Sauga-
tuck. In April, 1976, they executed a purchase
agreement for the sale of one of the parcels to
plaintiff and George Wigglesworth for $35,500. The
purchase agreement stipulated that plaintiff and
Wigglesworth would be given an option to pur-
chase the second parcel.

On May 7, 1976, the parties executed a docu-
ment entitled "OPTION TO PURCHASE REAL ESTATE"
which stated:

   In consideration of the sum of $10.00 Dollars,
   Glenna Wilson and Leonard Wilson grant unto
   Robert Brauer and George Wigglesworth an option
   to purchase the following described real estate and
   improvements, to wit:
                    [Description]
   for    the    sum    of    Forty    Thousand    Dollars

($40,000.00). The term of this option shall be indefinite and can be called by the option Grantors at anytime subsequent to execution.

In 1977, plaintiff assigned his interest in the purchased parcel to Wigglesworth, who in turn assigned his interest in the optioned parcel to plaintiff.

Leonard Wilson died in August, 1980. In March, 1981, plaintiff received a letter from Mrs. Wilson's attorney which stated that Mrs. Wilson was cancelling and/or revoking the option agreement. In response, plaintiff filed a "Notice of Exercise of Option" and a notice of lis pendens.

Plaintiff brought this action seeking specific performance of the option agreement. Mrs. Wilson filed a counterclaim to quiet title.[1] Of the original parties, only plaintiff and Wigglesworth were available to testify at trial; Mrs. Wilson was too ill to testify. Following trial, the court rendered an oral opinion finding no cause of action as to plaintiff's claim and granting defendant's request to quiet title. The court made the following findings and conclusions: (1) the agreement was not an option contract; (2) the agreement was void because it lacked mutuality of assent; and (3) the agreement was void because by its terms it was for an indefinite period of time. A trial court's findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Carney v Dep't of Transportation,* 145 Mich App 690; 378 NW2d 574 (1985).

---

[1] Mrs. Wilson died during the pendency of this appeal. Kathryn M. Hobbs was appointed personal representative of the Estate of Glenna I. Wilson and was substituted as the party defendant by order of this Court dated March 26, 1986.

Before we can determine whether the trial court's findings are clearly erroneous, we must determine the nature of the contract. We acknowledge the trial court's effort to identify the nature of the contract and recognize that the document herein is no "pearl of draftsmanship".[2] Although the agreement is laden with ambiguities, its ambiguous nature should not preclude its enforcement. "Ambiguity in a contract focuses and intensifies the court's duty to ascertain the intent of the parties in order that the agreement be carried out. . . ." *Stine v Continental Casualty Co,* 419 Mich 89, 112; 349 NW2d 127 (1984). In cases calling for construction of a contract, interpretation requires knowledge of the entire context, facts as well as words. 1A Corbin on Contracts, § 261, p 476. Extrinsic evidence, including parol evidence, is admissible to clarify the meaning of any ambiguous contract. *Stine, supra.* In no event is an ambiguity to result in a declaration that the contract is void. *Id.* According to well-settled principles of contract law, any ambiguities in the instant agreement will be construed against plaintiff, as the agreement was drawn up by an attorney on plaintiff's behalf. *Keller v Paulos Land Co,* 381 Mich 355, 362; 161 NW2d 569 (1968); *Brown v Considine,* 108 Mich App 504, 508; 310 NW2d 441 (1981).

We disagree with the trial court's conclusion that the agreement lacks mutuality of assent. The evidence adduced at trial leads to but one conclusion: the parties understood the agreement to mean that when the Wilsons were ready to sell the lot, plaintiff (and at one time, Wigglesworth) would have an option to by the lot for $40,000. Despite the arguments to the contrary, the testimony at

[2] *Mohr Park Manor, Inc v Mohr,* 83 Nev 107, 114; 424 P2d 101 (1967).

trial reveals that there was a meeting of the minds. Plaintiff testified as follows:

> Mrs. Wilson said that at such time as she felt unable to drive back and forth from Dayton and couldn't use the property, at that time they were ready to sell it.
>
> *     *     *
>
> At such time that they didn't want to use the property.
>
> *     *     *
>
> Mr. & Mrs. Wilson, in my opinion, the way I understood what I signed, are obligated to offer me the opportunity to buy this or give me the option to buy when they get ready to leave, that's their obligation.

John Diepenhorst, a licensed real estate agent who brought the parties together, testified that he knew from numerous conversations with Mrs. Wilson that the Wilsons understood the agreement to mean that plaintiff would have an option to buy the lot "when [they] wanted to get rid of it." George Wigglesworth testified that he understood the agreement as providing plaintiff with the first opportunity to buy the lot when Mrs. Wilson decided to sell.

From the evidence adduced at trial, we agree with the trial court that the agreement is not an option contract. The agreement contains no offer nor does it create the power of acceptance. Plaintiff, as the potential buyer, did not have a legal power of acceptance to purchase the lot, nor did the Wilsons have a correlative legal duty to sell. Corbin, *supra,* § 259, pp 459-460. The Wilsons merely promised that when they were ready to sell the lot (i.e., when they decided they could no longer "use" it), they would not sell to anybody until they had made an offer to sell to plaintiff and

Wigglesworth. We construe this agreement to be nothing more than a right of first refusal.[3]

In this case, plaintiff sought an action for specific performance of the agreement. Mrs. Wilson, however, had no obligation to sell her land and could not be compelled to do so. Thus, specific performance is not an available remedy. Plaintiff argues, by implication, the doctrine of anticipatory breach. He claims that he commenced the instant lawsuit in response to the March, 1981, letter in which Mrs. Wilson "revoked" the agreement.[4] Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contact or wait until the time of performance. *Jackson v American Can Co, Inc,* 485 F Supp 370, 375 (WD Mich, 1980). As a general rule, the doctrine will only apply to bilateral contracts, those which embody mutual and interdependent conditions and obligations. *Jackson, supra,* pp 374-375; 11 Williston on Contracts (3d ed), § 1326, p 146. In the case of first refusal agreements, there is no mutuality of obligation. Corbin, *supra,* § 261, p 476. Therefore, the doctrine of anticipatory breach does not apply and plaintiff is not entitled to immediate relief. The question remains whether the trial court properly granted defendant's request for quiet title.

We disagree with the trial court's conclusion

[3] On two prior occasions, Michigan courts were called upon to enforce similar agreements and, in doing so, labeled them option contracts rather than first refusal agreements. See *Glocksine v Malleck,* 372 Mich 115, 118; 125 NW2d 298 (1963), and *Bennett v Eisen,* 64 Mich App 241; 235 NW2d 749 (1975). Both decisions cite Corbin, *supra,* with approval. Therefore, with the principles of contract law set forth by Corbin as authority, we choose to distinguish between the two types of agreements.

[4] While Mrs. Wilson's promise was not an offer, it was not revokable. Corbin, *supra,* § 261, p 476.

that the agreement was void because it was for an indefinite period of time. "A well-established principle of contract law is that it is essential to the validity of any contract, including an option agreement, that a definite time for performance either be stated in the contract to be ascertainable from the contract's expressed or implied provisions." 31 ALR3d 525. "[A]n option to purchase is of such a nature that it is nearly always intended to be of limited duration." *Glocksine v Malleck,* 372 Mich 115, 118; 125 NW2d 298 (1963). First refusal agreements, by the terms of which the optionee is entitled to purchase at any time that the property is to be sold, have been sustained as sufficiently definite in several jurisdictions, even though the time when the option right came into being was necessarily left dependent upon the time of the proposed sale to another. See, e.g., *Fleischman v Zimmermann,* 258 Wis 194; 45 NW2d 616 (1951); *Price v Town of Ruston,* 171 La 985; 132 So 653 (1931); *Pearson v Horne,* 139 Ga 453; 77 SE 387 (1913); *Cummings v Nielson,* 42 Utah 157; 129 P 619 (1912).

In Michigan, however, it appears that first refusal agreements, like option agreements, must be for a definite period of time. The absence of specific time limits will not render the agreement void. Rather, the courts will construe the agreement to be for a reasonable period of time. In *Glocksine v Malleck, supra,* p 117, a lease agreement contained the following provision:

It is agreed that if first party desires to sell the property *at any time* that second parties, or either of them, shall have the first option to purchase the same and the right to meet any offer.

It is further agreed that in the event of the death of the first party, second parties may purchase the property from the estate of first party

for the sum of $5,000 cash. In the event of a purchase by second parties under either one of the above options the lease shall terminate. [Emphasis added.]

Although the Court construed the agreement to be an option, it held that the agreement expired at the end of the lease:

That a lessor would bind himself to a tenant indefinitely by such an agreement, beyond the normal term of his lease, thereby depriving his estate of any potential increase in property values, is unlikely. [*Glocksine, supra,* p 119.]

In *Bennett v Eisen,* 64 Mich App 241, 242; 235 NW2d 749 (1975), the parties drafted the following agreement:

This is to advise that in accordance with our understanding of this date, regarding the sale of the Black Lake property, you are to have the first option to purchase the 200 feet immediately west of the property sold to you at this time in the event that I decide to sell said parcel *at any time in the future.*
The purchase price is not to exceed Two Thousand ($2,000.00) Dollars if the property remains unimproved. Should buildings be erected on this site, we are to determine a fair market value of the buildings at the time of sale. [Emphasis added.]

Once again, this agreement was labeled an option. Although this Court found the agreement void for lack of consideration, it held that the agreement had not been exercised within a reasonable period of time. Thus, such agreements are not void simply because they lack a specific time for performance. Rather, they are valid for a reasonable period of time. Ordinarily, we would remand this case to the

trial court for a determination of what period of time is reasonable under the circumstances. In this case, however, the death of Mrs. Wilson renders remand unnecessary. We hold that the right of first refusal agreement terminated upon her death for the reason stated in *Waterstradt v Snyder*, 37 Mich App 400, 402-403; 194 NW2d 389 (1971):

> [The agreement] terminated on the death of the [grantor] because it required her personal volitional act in her lifetime. We cite with approval, as did the Supreme Court in [*Old Mission Peninsula School Dist v French*, 362 Mich 546, 551; 107 NW2d 758 (1961)], the general rule:
>
> "There is a strong tendency to construe an option or pre-emption to be limited to the lives of the parties, unless there is clear evidence of a contrary intent."

In the instant case, there is no clear evidence of contrary intent. If plaintiff intended to bind the Wilsons' heirs, he should have so provided.

The judgment of the circuit court granting defendant's request for quiet title and denying plaintiff's request for specific performance is affirmed.