VICKERS *v.* AMERICAN OIL COMPANY

1. Evidence—Rule of Integration.
   The intent of the parties determines whether a particular subject of negotiation is embodied by a writing and the best index for judging the parties' intent is whether the particular element of the alleged extrinsic negotiation is dealt with at all in the writing.

2. Contracts—Merger—Oral Agreement—Parol Evidence.
   All prior negotiations pertaining to a subject dealt with in a written contract are merged into the writing and parol evidence is inadmissible to show that the contract does not conform with verbal agreements made prior to its execution.

3. Landlord and Tenant — Leases — Modification — Consideration — Pre-Existing Duty.
   The continuing tenancy of lessee was not sufficient consideration for an oral modification of the lease by which the lessor promised to repair defects in the rented premises where the lessees' continuing tenancy was already required of him under

References for Points in Headnotes
[1]  30 Am Jur 2d, Evidence §§ 1043, 1044.
[2]  30 Am Jur 2d, Evidence §§ 1043–1047.
[3]  49 Am Jur 2d, Landlord and Tenant §§ 166, 168–174.
[4]  41 Am Jur, Pleading §§ 340–343.

the original written lease and where there was no evidence that the lessees' belief that his continuing tenancy was consideration for the lessor's representation was ever conveyed to the lessor.

4. SUMMARY JUDGMENT—JUDGMENT—LEASES.

Summary judgment was properly granted on the ground that the lessees-plaintiffs' complaint for damages from a fall on the leased premises failed to state a claim upon which relief could be granted where a written lease explicitly provided that the lessee acknowledged the good condition of the premises, that the lessor would not be liable for any injuries on the rented premises, including those to the lessee, that the lessee would keep the premises in good repair, and that all obligations and agreements were set forth in the lease and where there was no sufficient consideration to support an oral modification of the lease by which the lessor made representations that it would repair the injury-producing defect, even though there was a question of fact as to whether the lessor made the alleged representations and, if the representations had been made, there would be another question of fact as to their exact content.

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted Division 1 June 8, 1970, at Detroit. (Docket No. 8,059.) Decided August 26, 1970.

Complaint by Lewis Vickers and Dollie Vickers against the American Oil Company for damages from a fall. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiffs.

*Alexander, Buchanan & Conklin,* for defendant.

Before: HOLBROOK, P. J. and R. B. BURNS and O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J.   This is an action based on contract.
On September 1, 1964, the parties entered into a
written agreement whereby plaintiff Lewis Vickers
agreed to sublease a gasoline service station from
defendant.   The lease, by its terms, provided in per-
tinent part:

"Lessee hereby covenants and agrees as follows:

"1. That Lessee has examined and knows the con-
dition of said premises and the buildings, equipment,
machinery and appliances situated thereon, acknowl-
edges that he has received the same in good order
and repair (except as otherwise specified), and that
no representations as to the condition or repair
thereof have been made by Lessor or anyone rep-
resenting Lessor.

"2. That Lessee   *   *   *   will keep said premises,
buildings, equipment, machinery and appliances, to-
gether with the adjoining sidewalks and entrance
driveways in good order and repair;   *   *   *.

"3. Lessor, its agents and employees shall not be
liable for any loss, damage, injuries, or other casu-
alty of whatsoever kind or by whomsoever caused,
to the person or property of anyone (including
Lessee) on or off the premises, arising out of or
resulting from Lessee's use, possession or operation
thereof, or from defects in the premises whether ap-
parent or hidden, or from the installation, existence,
use, maintenance, condition, repair, alteration, re-
moval or replacement of any equipment thereon,
whether due in whole or in part to negligent acts or
omissions of Lessor, its agents or employees; and
Lessee for himself, his heirs, executors, administra-
tors, successors and assigns, hereby agrees to in-
demnify and hold Lessor, its agents and employees,
harmless from and against all claims, demands, lia-
bilities, suits or actions (including all reasonable ex-
penses and attorneys' fees incurred by or imposed

on the Lessor in connection therewith) for such loss, damage, injury or other casualty.

*   *   *

"It is further mutually covenanted and agreed as follows:

*   *   *

"13. That no obligation, agreement or understanding on the part of either party to be performed shall be implied from any of the terms and provisions of this lease, all obligations, agreements and understandings being expressly set forth herein."

In their amended complaint, dated February 22, 1968, plaintiffs alleged that at the time the lease was entered into, a certain defect was present in the driveway area, to wit:

"that the area immediately surrounding said gasoline pumps was paved with concrete; that adjacent to and at a tangent to said concrete paving was another smaller portion of driveway, paved with concrete; that surrounding said abutting pads of concrete, the area was paved with blacktop, including the triangular area formed by the joining of the said two concrete pads.

*   *   *

"That the defect in the driveway area consisted of a depression in the driveway, wherein the triangular blacktop area formed by the joining of the concrete pads was lower than the surface of said concrete pads.

*   *   *

"That said defect was approximately two (2) inches deep, or more."

Plaintiffs further alleged that, both prior and subsequent to plaintiffs' signing the lease, assurances were given by defendant's agents that necessary repairs to remedy the defective condition in the driveway would be made. On March 10, 1965, plaintiff

Lewis Vickers tripped on the concrete lip, fell, and sustained severe and allegedly permanent back injuries. As a result, plaintiffs instituted this action for damages, alleging that Lewis Vickers's injuries were a result of "the breaches of covenants, promises and agreements" of defendant.[1]

Filed in support of the amended complaint was an affidavit, signed by Lewis Vickers, which read, in part, as follows:

"3. That [at the time the lease was entered into] there existed a certain defect in the driveway area of said property, more particularly located at the edge of the concrete pad in front of the salesroom, and that such defect was made known to Mr. E. J. Cannon,[2] sales representative of the defendant American Oil Company, who on behalf of the defendant American Oil Company covenanted and agreed to repair same.

"4. That your deponent continued to remind the said Mr. Cannon, agent of the defendant American Oil Company, of their promise to repair said driveway, and further received from other sales representatives of the defendant American Oil Company the same promises and covenants that said driveway defect would be repaired by the American Oil Company.

"5. That said defendant American Oil Company through its agents, servants, and employees failed to repair said defect as they had promised."

---

[1] There were prior pleadings in this matter which are not relevant to this appeal. Another party, Barrett Woodsmall, was also named as a defendant in plaintiffs' amended complaint as the owner of the premises in question. A summary judgment in favor of Woodsmall was entered on August 12, 1969, from which no appeal has been taken.

[2] In an affidavit attached to a previous motion for summary judgment, filed in response to plaintiffs' original complaint, Mr. Cannon stated simply that he had "knowledge of the conditions of said property and the provisions of the lease dated September 1, 1964, covering same" and that he had "made known the condition of the property under this lease agreement to your plaintiff".

On March 7, 1968, defendant answered and filed a motion for summary judgment alleging that plaintiffs had failed to state a claim upon which relief could be granted in light of the express provisions of the lease. On May 3, 1968, plaintiffs answered defendant's motion and alleged that "all of the duties and obligations, promises and covenants are not shown in said lease agreement" and that "the terms and provisions of the lease  *  *  *  were modified at the signing of said lease, and thereafter, prior to plaintiff's injury, in that certain exceptions were made with respect to repairs of certain defects existing in, on, and about the leasehold premises at the time of said agreement of September 1, 1964, which repairs, notwithstanding the written terms of said lease, were agreed by defendant's agents, servants, and employees, to be undertaken and remedied by said defendant American Oil Company  *  *  *  ." In addition to incorporating by reference the affidavit of Lewis Vickers (see fn 3), plaintiffs attached to their answer as exhibits certain inter-office memoranda of defendant. In these memoranda, dated October 2, October 14, and November 27, 1964, the subject of the defect in question was discussed along with several other maintenance problems existing at the gas station. It is apparent from these memoranda that defendant was negotiating with the *owner* of the property and that the owner had agreed to undertake the repair of the driveway. An additional memorandum, dated May 19, 1965, read as follows:

"Subject: Driveway at Lou Vickers. The driveway is in bad condition; a letter (652) dated in 11–64 stated the need for repairs and the fact that the property owner had been notified. I recommend that the driveway be repaired immediately and the bill sent to the property owner. The reason for this

recommendation is the fact that the dealer (Lou Vickers) and a customer has suffered injuries from this and there are lawyers already investigating the situation. Thanking you for your time. Signed/."

At the conclusion of the hearing on May 3, 1968, of defendant's motion for summary judgment, the trial court granted the motion. On June 7, 1968, an order was entered dismissing plaintiffs' claim with prejudice. In lieu thereof, an order granting summary judgment for defendant of no cause of action was entered August 29, 1969. This appeal followed.

The disposition of this case is clearly dictated by settled principles of contract law. There is no question that the subject matter of this dispute, the driveway defect and the duty to repair it, was expressly referred to in the lease. Accordingly, as stated in 9 Wigmore on Evidence (3d ed) § 2430, p 98:

"Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties thereto.* * * * In deciding upon this intent, the chief and most satisfying index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transactions on that element * * * ." (Emphasis in original.)

See 3 Corbin on Contracts, § 573 *et seq.;* 15 Callaghan's Michigan Civil Jurisprudence, Landlord and Tenant, § 92; 4 Callaghan's Michigan Pleading & Practice (2d ed), Evidence, § 36.395. In Michigan, the rule has been expressed as follows:

"We are in accord with appellant in his contention that where parties to an agreement have entered into a written contract covering a particular subject

matter, all prior negotiations pertaining to that subject are merged in the written contract and parol evidence is inadmissible to show that the contract does not conform with verbal agreements made prior to its execution." *Brady* v. *Central Excavators, Inc.* (1947), 316 Mich 594, 607.

Similarly, in *Grashaw* v. *Wilson* (1900), 123 Mich 364, 368, the Court stated, "The terms of the written lease could not be varied by proof of a prior or contemporaneous verbal agreement."

On oral argument, counsel for plaintiffs, while having conceded the rule that the parties "[having] stated the terms of their contract in the form of a complete written integration, it cannot be varied or contradicted by proof of an antecedent negotiations and agreements" (3 Corbin on Contracts, *supra,* p 368), nevertheless urged that the alleged representations of defendant's agents, *subsequent* to the signing of the lease, constituted a valid oral modification of the lease. He contended that plaintiffs' continuing tenancy is a sufficient consideration for the new contract, citing *Minor-Dietiker* v. *Mary Jane Stores of Michigan, Inc.* (1966), 2 Mich App 585. The infirmity in this argument is apparent from the interpretation given *Minor-Dietiker* in *Newkirk* v. *Millman Brothers, Inc.* (1969), 16 Mich App 306, 308:

"Like the present case, *Minor-Dietiker* and *Green*[3] dealt with alleged oral modifications of a lease. In *Minor-Dietiker,* the Court pointed out that an oral modification of a written lease will be effective *if supported by independent consideration such as a promised performance not already required by the original lease.* In *Green,* it was explained that the new consideration in *Minor-Dietiker* was the lessee's promise to remain in possession. The original lease did not require the lessee to maintain occupancy,

[3] *Green* v. *Millman Brothers, Inc.* (1967), 7 Mich App 450.

only to pay the specified rent, so his later promise not to vacate could be a distinct benefit to the lessor which would constitute new consideration for the reduction in rent." (Emphasis supplied.)

In the present case, we have carefully reviewed the pleadings, motions, and affidavits presented by both parties and find absolutely no indication that Lewis Vickers' continuing tenancy was any more than what was already required of him under the lease. Even if plaintiff were of the opinion that his continuing tenancy was consideration for defendant's alleged representations, there is nothing to indicate that such was ever conveyed to any of defendant's agents. Under these circumstances, we are constrained to hold that there was no valid subsequent oral modification of the lease.

Counsel for plaintiffs urged vigorously on oral argument that a question of fact was created by the affidavit and counter-affidavits concerning the alleged undertaking of defendant. We can agree that there was a fact question as to whether the defendant did or did not make the alleged representations. We can agree that if the representations were made, an additional fact question existed as to exactly what they were. Granting the existence of both these fact issues, we cannot, as an intermediate appellate court, disregard the settled precedential case law of the Supreme Court of our state.

Considering all of the pleadings, affidavits, and documentary evidence in the light most favorable to the plaintiffs, we are constrained to hold they failed to state a claim on which relief could be granted.

Affirmed, costs to defendant.

All concurred.